[No. S145458. Aug. 18, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WAYNE CHANCE, Defendant and Appellant.

COUNSEL

Richard Power, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Brian G. Smiley, Julie A. Hokans, Janet Neeley, Harry Joseph Colombo and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CORRIGAN, J.**—Here we consider the actus reus required for assault. Since 1872, the Penal Code has defined assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.)[1] This case involves only the "present ability" aspect of the crime. Nevertheless, we must consider the effect of statements in prior opinions analyzing the intent required for assault.

In *People v. Colantuono* (1994) 7 Cal.4th 206, 216 [26 Cal.Rptr.2d 908, 865 P.2d 704] (*Colantuono*), and *People v. Williams* (2001) 26 Cal.4th 779, 782, 784–785 [111 Cal.Rptr.2d 114, 29 P.3d 197] (*Williams*), we reaffirmed the established rule that assault is a general intent crime. We noted that attempt crimes generally require specific intent, but that the "unlawful attempt" term of section 240 is different. Assault requires an act that is closer to the accomplishment of injury than is required for other attempts. Other criminal attempts, because they require proof of specific intent, may be more remotely connected to the attempted crime. (*Colantuono*, at p. 216; *Williams*, at p. 786.) When discussing the intent requirement, we have characterized assault as "unlawful conduct immediately antecedent to battery." (*Colantuono*, at p. 216; see *Williams*, at p. 786.)

Here, defendant relies on that characterization to argue that he lacked the present ability to commit assault because his conduct did not immediately precede a battery. The Court of Appeal, in a split decision, agreed. We reject this application of *Colantuono* and *Williams*. Neither case discussed the

---

[1] Further statutory references are to the Penal Code. Earlier statutes included essentially the same definition. (Stats. 1856, ch. 139, p. 220; Stats. 1850, ch. 124, p. 340.)

present ability element of assault. That element is satisfied when "a defendant has attained the means and location to strike immediately." *(People v. Valdez* (1985) 175 Cal.App.3d 103, 113 [220 Cal.Rptr. 538] *(Valdez)*; see *People v. Licas* (2007) 41 Cal.4th 362, 366–367 [60 Cal.Rptr.3d 31, 159 P.3d 507].) In this context, however, "immediately" does not mean "instantaneously." It simply means that the defendant must have the ability to inflict injury on the present occasion.[2] Numerous California cases establish that an assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be "immediate," in the strictest sense of that term. *Colantuono* and *Williams* did not discuss or disturb this settled authority.

## FACTS

The facts are undisputed. On the afternoon of November 29, 2003, sheriff's officers drove to a house in a rural area of El Dorado County to arrest defendant pursuant to felony warrants. The officers had information that defendant was there and armed with a handgun. Defendant, evidently alerted to their approach, ran from the house. Sergeant Tom Murdoch pursued him on foot. Murdoch wore a vest marked with a large yellow star and the word "SHERIFF" on the front and back. Defendant saw Murdoch and kept running.

After defendant turned up the driveway to another home, Murdoch twice shouted, "Sheriff's Department, stop." From a distance of 30 to 35 feet, Murdoch saw that defendant was carrying a handgun. Defendant ran around the front end of a trailer.[3] Murdoch approached, looking and listening for any indication that defendant was still fleeing. Detecting none, and anticipating that defendant might be lying in wait for him, Murdoch advanced to his left, around the back of the trailer. Carefully peering around the corner, he saw defendant pressed against the trailer, facing the front end. He was holding the gun in his right hand, extended forward and supported by his left hand.

Defendant looked back over his right shoulder at Murdoch, who had his own gun trained on defendant. Murdoch repeatedly told defendant to drop the weapon. The officer testified, "I was in fear of my life. I was afraid . . . he was going to try to shoot me any second." After some hesitation, defendant

---

[2] It has long been established that the "injury" element of the assault statute is satisfied by any attempt to apply physical force to the victim, and includes even injury to the victim's feelings. *(Colantuono, supra,* 7 Cal.4th at p. 214, fn. 4; *People v. Rocha* (1971) 3 Cal.3d 893, 899–900, fn. 12 [92 Cal.Rptr. 172, 479 P.2d 372]; *People v. Bradbury* (1907) 151 Cal. 675, 676–677 [91 P. 497].)

[3] Murdoch described the trailer as about 20 feet long, with a door and windows. Another deputy called it a "travel trailer."

brought the gun toward the center of his body, then flipped it behind him. He began to run again, but fell after only a few steps. Defendant was arrested and the gun recovered. It was fully loaded with 15 rounds in the magazine. There was no round in the firing chamber, but defendant could have chambered one by pulling back a slide mechanism. The safety was off.

A jury convicted defendant of assault with a firearm on a peace officer under section 245, subdivision (d)(1),[4] along with other offenses. Only the assault conviction is at issue on this appeal by the Attorney General.

## DISCUSSION

The Court of Appeal majority reversed the assault conviction, concluding that defendant did not have the "present ability[] to commit a violent injury" required for assault under section 240, because his act of pointing a gun at a place where he thought Sergeant Murdoch would appear was not immediately antecedent to a battery. For the proposition that an assault must immediately precede a battery, the majority relied on our decision in *Williams, supra,* 26 Cal.4th 779. Its reliance was misplaced. *Williams* involved only the mental state required for assault, and did not construe the present ability requirement.

*Williams* clarified our holding in *Colantuono* that assault is a general intent crime, "established upon proof the defendant wilfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery." (*Colantuono, supra,* 7 Cal.4th at p. 214; see *Williams, supra,* 26 Cal.4th at p. 782.) To ensure that an assault conviction cannot be based on facts unknown to a defendant, the *Williams* court held that a defendant must "actually know[] those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another." (*Williams,* at p. 788.)

The language deemed controlling by the Court of Appeal majority here is found in *Williams*'s review of the distinction between ordinary criminal attempt, which requires specific intent, and the "unlawful attempt . . . to commit a violent injury" required for assault under section 240. This statutory language has remained unchanged since its enactment. *Williams* explained that when the Legislature employed the word "attempt" in section 240, it

---

[4] "Any person who commits an assault with a firearm upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for four, six, or eight years." (§ 245, subd. (d)(1).)

used the term in a particular sense.[5] We quote the relevant paragraphs in their entirety, to provide the context:

 "In determining which meaning of 'attempt' the Legislature intended to use in section 240, we must look to the historical 'common law definition' of assault. (Code commrs. note foll. Ann. Pen. Code, § 240 (1st ed. 1872, Haymond & Burch, commrs.-annotators) pp. 104–105.) ' "The original concept of criminal assault developed at an earlier day than the doctrine of criminal attempt in general. . . ." ' (*Colantuono, supra,* 7 Cal.4th at p. 216, quoting Perkins on Criminal Law (2d ed. 1969) ch. 2, § 2, pp. 118–119.) Assault 'is not simply an adjunct of some underlying offense [like criminal attempt], but an independent crime statutorily delineated in terms of certain unlawful conduct immediately antecedent to battery.' (*Colantuono,* at p. 216.) Unlike criminal attempt where the ' "act constituting an attempt to commit a felony may be more remote," ' ' "[a]n assault is an act done toward the commission of a battery" ' and must ' "immediately" ' precede the battery. (Perkins & Boyce, Criminal Law (3d ed. 1982) p. 164 (Perkins).) Indeed, our criminal code has long recognized this fundamental distinction between criminal attempt and assault by treating these offenses as *separate and independent* crimes. (Compare § 240 with §§ 663, 664.)

 "Consequently, criminal attempt and assault require different mental states. Because the act constituting a criminal attempt 'need not be the last proximate or ultimate step toward commission of the substantive crime,' criminal attempt has always required 'a specific intent to commit the crime.' (*People v. Kipp* (1998) 18 Cal.4th 349, 376 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) In contrast, the crime of assault has always focused on the nature of the act and not on the perpetrator's specific intent. An assault occurs whenever ' "[t]he next movement would, *at least to all appearance,* complete the battery." ' (Perkins, *supra,* p. 164, italics added.) Thus, assault 'lies on a definitional . . . *continuum of conduct* that describes its essential relation to battery: An assault is an incipient or inchoate battery; a battery is a consummated assault.' (*Colantuono, supra,* 7 Cal.4th at p. 216, italics added.) As a result, a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such an intent." (*Williams, supra,* 26 Cal.4th at p. 786.)

The Attorney General argues that these passages in *Williams* and *Colantuono* have inappropriately incorporated the concept of "apparent present ability" into section 240. (See *Valdez, supra,* 175 Cal.App.3d at p. 110.) We disagree. As explained below, the discussion of the proximity between assault and

---

[5] Although various statutory modifications have been proposed, the Legislature has not acted on them. (See Hinkley, *Assault-related Conduct Under the Proposed California Criminal Code* (1974) 25 Hastings L.J. 657; *Williams, supra,* 26 Cal.4th at p. 789.)

battery in *Williams* and *Colantuono* was confined to the intent requirement for assault, and did not mention or change the well-established understanding of the "present ability" element of section 240.

Here, defendant does not dispute that he had the general intent required for assault. Like the Court of Appeal majority, however, he relies on the statements in *Williams* and *Colantuono* that an assault must *immediately* precede the battery. (See *Williams, supra,* 26 Cal.4th at p. 786, quoting *Colantuono.*) Defendant also notes that *Williams* and *Colantuono* characterized assault as occurring whenever *the next movement* would complete the battery. (*Williams,* at p. 786.) Therefore, he argues, he did not have the "present ability" to inflict injury required by section 240, because he would have had to turn, point his gun at the officer, and chamber a round before he could shoot at Murdoch.

■ This application of *Williams* and *Colantuono* is mistaken. In those cases,· we were concerned with distinguishing assault from the later developed criminal attempt doctrine. (*Williams, supra,* 26 Cal.4th at p. 786; *Colantuono, supra,* 7 Cal.4th at p. 216.) The holdings in *Williams* and *Colantuono* were not intended to and did not transform the traditional understanding of assault to insulate defendants from liability until the last instant before a battery is completed. Although temporal and spatial considerations are relevant to a defendant's "present ability" under section 240, it is the ability to inflict injury on the present occasion that is determinative, not whether injury will necessarily be the instantaneous result of the defendant's conduct.

An early case from this court explains the sense in which the present ability element contemplates "immediate" injury. In *People v. McMakin* (1857) 8 Cal. 547 (*McMakin*), the defendant threatened to shoot the victim, "at the same time drawing a Colt's revolver, which he held in a perpendicular line with the body of [the victim], but with the instrument so pointed that the ball would strike the ground before it reached the [victim], had the pistol been discharged." (*Ibid.*) The court, after quoting the statutory language that today appears in section 240, observed: "The intention must be to commit a present, and not a future injury, upon a different occasion. The acts done must be in preparation for an immediate injury." (*McMakin,* at p. 548.)[6]

---

[6] Although the language quoted above might be deemed consistent with a specific intent requirement, we have consistently referred to *McMakin* as authority for the proposition that general intent is sufficient for assault. (*Colantuono, supra,* 7 Cal.4th at pp. 213, fn. 3, 217, 219; *People v. Hood* (1969) 1 Cal.3d 444, 452, fn. 4 [82 Cal.Rptr. 618, 462 P.2d 370].) The dissent suggests there was a time when a specific intent to injure was required. This is not the case. Despite some confusion in certain opinions, the overwhelming weight of California authority

██ Thus, it is a defendant's action enabling him to inflict a present injury that constitutes the actus reus of assault. There is no requirement that the injury would necessarily occur as the very next step in the sequence of events, or without any delay. The *McMakin* court noted that assault does not require a direct attempt at violence. (*McMakin, supra*, 8 Cal. at p. 548.) "There need not be even a direct attempt at violence; but any indirect preparation towards it, under the circumstances mentioned, such as drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient." (*Hays v. The People* (N.Y. Sup.Ct. 1841) 1 Hill 351, 352–353, cited in *McMakin*, at p. 548.)

██ Subsequent California cases establish that when a defendant equips and positions himself to carry out a battery, he has the "present ability" required by section 240 if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury.

*People v. Ranson* (1974) 40 Cal.App.3d 317 [114 Cal.Rptr. 874], is particularly instructive. Ranson aimed a rifle at a police car. After the police shot and disarmed him, it was discovered that there was no round in the chamber because a cartridge was jammed in the magazine. (*Id.* at pp. 319–320.) The *Ranson* court noted that while an unloaded gun does not confer "present ability,"[7] the element is satisfied if the defendant wields an automatic rifle with cartridges in the magazine, even if the firing chamber is empty. (*Ranson*, at p. 321, citing *People v. Simpson* (1933) 134 Cal.App. 646, 650 [25 P.2d 1008].) The court continued: "The instant case presents a unique fact situation. The rifle held by appellant was definitely loaded and operable; however, the top cartridge that was to be fired was at an angle that caused the gun to jam. There was evidence from which the trial court could infer that appellant knew how to take off and rapidly reinsert the clip. [¶] Time is a continuum of which 'present' is a part. 'Present' can denote 'immediate' or a point near 'immediate.' The facts in *People v. Simpson, supra*, 134 Cal.App. 646, for example, present a situation where the gun could be fired nearly immediately.[8] We are slightly more removed from 'immediate' in the instant case; however, we hold that the conduct of appellant is near enough to constitute 'present' ability for the purpose of an assault." (*Ranson*, at p. 321.)

---

has always viewed assault as a general intent crime. (See *Colantuono*, at pp. 215–218; *People v. Rocha, supra*, 3 Cal.3d at pp. 898–899; *Hood*, at pp. 452–453, fn. 4, citing cases & p. 455.)

[7] On the rule that assault cannot be committed with an unloaded gun, unless the weapon is used as a bludgeon, see, e.g., *People v. Rodriguez* (1999) 20 Cal.4th 1, 11, and footnote 3 [82 Cal.Rptr.2d 413, 971 P.2d 618]; *Valdez, supra*, 175 Cal.App.3d at page 111; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, section 9, page 644.

[8] In *Simpson*, the defendant held the muzzle against the victim's stomach, with her finger on or near both the trigger and the lever that would transfer a round to the chamber. (*People v. Simpson, supra*, 134 Cal.App. at p. 648.)

*Ranson*'s analysis is consistent with the language of section 240, which requires only "a present ability."[9]

Here, defendant was further along the continuum of conduct toward battery than Ranson was. Like Simpson, he needed only to transfer a shell to the firing chamber. (*People v. Simpson, supra,* 134 Cal.App. at p. 650.) As in *People v. Pearson* (1957) 150 Cal.App.2d 811 [311 P.2d 142], another case following *Simpson,* defendant could have chambered a round simply by pulling back a slide. (*Pearson,* at p. 816.) The *Ranson* court held the evidence of present ability sufficient, even though Ranson had to do much more than turn around to use his weapon against the police. He had to remove the clip, dislodge a jammed cartridge, reinsert the clip, chamber a round, point the weapon, and pull the trigger. (*Ranson, supra,* 40 Cal.App.3d at p. 321.)[10]

Defendant contends he lacked the present ability to inflict injury not only because he was aiming in the opposite direction from Murdoch, but also because Murdoch had him covered and would have shot him first. However, this argument cannot be squared with cases demonstrating that an assault may occur even when the infliction of injury is prevented by environmental conditions or by steps taken by victims to protect themselves.

In *Valdez, supra,* 175 Cal.App.3d 103, the defendant was convicted of assault with a firearm for shooting at a gas station attendant who was behind a bulletproof window. (*Id.* at p. 106.) He contended he lacked the present ability to injure the attendant because of the protective glass. (*Id.* at p. 108.) The Court of Appeal disagreed. We do not adopt all the *Valdez* court's reasoning,[11] but the following discussion is sound:

---

[9] As we have noted, *McMakin* demonstrates that "present" and "immediate" are not necessarily inconsistent terms. (*McMakin, supra,* 8 Cal.4th at p. 548.) "Immediate" can mean "near to or related to the present . . . of or relating to the here and now." (Merriam-Webster's Collegiate Dict. (11th ed. 2004) p. 621.)

[10] The dissent claims the *Ranson* court viewed assault as a specific intent offense. However, in its extremely brief discussion of the intent element, the court made no mention of specific intent, and cited *People v. Gaines* (1966) 247 Cal.App.2d 141, 148 [55 Cal.Rptr. 283]. (*Ranson, supra,* 40 Cal.App.3d at p. 321.) *Gaines* states plainly that "[t]he crime of assault with a deadly weapon requires no proof of specific intent to commit the offense." (*Gaines,* at p. 148.)

[11] For instance, the court opined that "[t]he real function of this 'present ability' element in common law assault as incorporated in the California statute is to require the perpetrator to have gone beyond the minimal steps involved in an attempt." (*Valdez, supra,* 175 Cal.App.3d at p. 112.) As we have noted, the concept of criminal assault reflected in our statutes predates the doctrine of criminal attempt in general. (*Williams, supra,* 26 Cal.4th at p. 786.) Thus, while the "present ability" element is consistent with the distinction between the unlawful attempt element of assault and other criminal attempts, its "real function" is separate and flows directly from the plain meanings of "present" and "ability." As *McMakin* established, "a present, and not a future injury" must be threatened. (*McMakin, supra,* 8 Cal. at p. 548.) And as the unloaded gun cases demonstrate, the defendant must have an actual, not merely apparent,

"Nothing suggests this 'present ability' element was incorporated into the common law to excuse defendants from the crime of assault where they have acquired the means to inflict serious injury and positioned themselves within striking distance merely because, unknown to them, external circumstances doom their attack to failure. This proposition would make even less sense where a defendant has actually launched his attack—as in the present case—but failed only because of some unforeseen circumstance which made success impossible. Nor have we found any cases under the California law which compel this result. The decisions holding a defendant lacks 'present ability' when he tries to shoot someone with an unloaded gun or a toy pistol do not support any such proposition. In those situations, the defendant has simply failed to equip himself with the personal means to inflict serious injury even if he thought he had." (*Valdez, supra,* 175 Cal.App.3d at p. 112.)

■ "Once a defendant has attained the means and location to strike immediately he has the 'present ability to injure.' The fact an intended victim takes effective steps to avoid injury has never been held to negate this 'present ability.' " (*Valdez, supra,* 175 Cal.App.3d at p. 113, citing *People v. Yslas* (1865) 27 Cal. 630; see also *People v. Licas, supra,* 41 Cal.4th at pp. 366–367.) This view of the "present ability" element is accurate, and consistent with the *McMakin* holding that an "immediate" injury for purposes of assault is one that is threatened on the present occasion. (*McMakin, supra,* 8 Cal. at p. 548.)

Assault cases decided both before and after *Valdez* provide further examples. In *Yslas,* the defendant approached within seven or eight feet of the victim with a raised hatchet, but the victim escaped injury by running to the next room and locking the door. Yslas committed assault, even though he never closed the distance between himself and the victim, or swung the hatchet. (*Yslas, supra,* 27 Cal. at pp. 631, 633–634.) Similarly, in *People v. Hunter* (1925) 71 Cal.App. 315, 318–319 [235 P. 67], the victim jumped out a window as the defendant tried to pull a gun from his sock. Hunter committed assault, even though the victim was gone before he could deploy his weapon.

*People v. Raviart* (2001) 93 Cal.App.4th 258, 267 [112 Cal.Rptr.2d 850] (*Raviart*) follows *Valdez* while distinguishing our opinion in *Williams.* Two officers, Wagstaff and Keller, went to a motel to arrest Raviart. (*Raviart,* at pp. 261–262.) They rounded a corner, with Wagstaff nearer to the building than Keller. Keller saw Raviart pointing a gun at him. Both officers fired at

---

ability to inflict injury. (See fn. 7, *ante.*) The *Valdez* court properly recognized that neither of these aspects of "present ability" is negated by the circumstance that injury turns out to be impossible for reasons unrelated to the defendant's preparations. (*Valdez,* at pp. 111–114.)

Raviart as Keller moved behind the corner with Wagstaff. (*Id.* at pp. 264–265.) When Raviart's gun was recovered, it was loaded but unfired. (*Id.* at p. 266.)

Relying on *Williams*, Raviart contended he could not be convicted of an assault against Wagstaff because pointing the gun at Keller was not the " 'last proximate step' " toward committing a battery against Wagstaff. (*Raviart, supra*, 93 Cal.App.4th at p. 266; see *Williams, supra*, 26 Cal.4th at p. 786.) The Court of Appeal rejected this argument. "In clarifying the mental state required for assault, the Supreme Court explained that an assault is an act done toward the commission of a battery and that '[a]n assault occurs whenever " '[t]he next movement would, at least to all appearance, complete the battery.' " ' (*People v. Williams, supra*, 26 Cal.4th at p. 786 . . . .) We do not understand this statement to mean that for the crime of assault to occur, the defendant must in every instance do everything physically possible to complete a battery short of actually causing physical injury to the victim. Such a holding would be inconsistent with numerous precedents, including, but not limited to, *People v. McMakin, supra*, 8 Cal. 547, *People v. Hunter, supra*, 71 Cal.App. 315, and *People v. Thompson* [(1949)] 93 Cal.App.2d 780 [209 P.2d 819]."[12] (*Raviart*, at pp. 266–267.)

The *Raviart* court's reading of *Williams* was correct. Our references to the last proximate step, and to the next movement completing a battery, were for the purpose of explaining that assault occurs at a point closer to the infliction of injury than is required for crimes falling under the general doctrine of criminal attempt. (*Williams, supra*, 26 Cal.4th at p. 786.) The *Williams* analysis did not disturb the numerous cases demonstrating that assault is not limited to acts done at the last instant before a completed battery.

The court also rejected the claim that Raviart lacked the "present ability" to injure Wagstaff because the officer was protected by the corner of the building. The court noted that Wagstaff was not at all times behind the corner, and in any event "the fact that Officer Wagstaff may have been sheltered, in whole or in part, by the building did not preclude the jury from finding defendant had the present ability to injure him. 'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure." The fact an intended victim takes effective steps to avoid injury has never been held to negate this "present ability." ' ([*Valdez, supra,*] 175 Cal.App.3d 103, 113.)" (*Raviart, supra*, 93 Cal.App.4th at p. 267.)

■ Here, defendant's loaded weapon and concealment behind the trailer gave him the means and the location to strike "immediately" at Sergeant

---

[12] *Thompson* is a case like *McMakin*, in which the defendant confronted the victims with a loaded gun but never pointed it directly at them. (*People v. Thompson, supra*, 93 Cal.App.2d at pp. 781–782.)

Murdoch, as that term applies in the context of assault. Murdoch's evasive maneuver, which permitted him to approach defendant from behind, did not deprive defendant of the "present ability" required by section 240. Defendant insists that, unlike the defendants in the cases discussed above, he never pointed his weapon in Murdoch's direction. That degree of immediacy is not necessary, as another early case from this court demonstrates. In *People v. Lee Kong* (1892) 95 Cal. 666 [30 P. 800], "[a] policeman secretly bored a hole in the roof of appellant's building, for the purpose of determining, by a view from that point of observation, whether or not he was conducting therein a gambling or lottery game. This fact came to the knowledge of appellant, and upon a certain night, believing that the policeman was upon the roof at the contemplated point of observation, he fired his pistol at the spot. He shot in no fright, and his aim was good, for the bullet passed through the roof at the point intended; but very fortunately for the officer of the law, at the moment of attack he was upon the roof at a different spot, viewing the scene of action, and thus no substantial results followed from appellant's fire." (*Id.* at pp. 667–668.)

This court had no difficulty concluding that "the appellant had the present ability to inflict the injury. He knew the officer was upon the roof, and knowing that fact he fired through the roof . . . . The fact that he was mistaken in judgment as to the exact spot where his intended victim was located is immaterial. That the shot did not fulfill the mission intended was not attributable to forbearance or kindness of heart upon defendant's part; neither did the officer escape by reason of the fact of his being so far distant that the deadly missile could do him no harm. He was sufficiently near to be killed from a bullet from the pistol . . . . Appellant's mistake as to the policeman's exact location upon the roof affords no excuse for his act, and causes the act to be no less an assault." (*People v. Lee Kong, supra*, 95 Cal. at p. 670.)[13]

Here too, defendant's mistake as to the officer's location was immaterial. He attained the present ability to inflict injury by positioning himself to strike on the present occasion with a loaded weapon. This conduct was sufficient to establish the actus reus required for assault.

## CONCLUSION

We reverse the Court of Appeal's judgment, insofar as it held the evidence insufficient to support a conviction for assault with a firearm on a peace officer.

George, C. J., Baxter, J., Chin, J., and Moreno, J., concurred.

---

[13] The *Lee Kong* opinion does not stand for the proposition that assault requires a specific intent to inflict injury. The court was merely construing the present ability requirement in light of the facts before it.

**KENNARD, J.,** Dissenting.—While being pursued by sheriff's deputies, defendant ran toward the front of a travel trailer. When Sergeant Tom Murdoch, with gun drawn, looked around a corner at the back of the trailer, he saw defendant with a gun pointed toward the front of the trailer. As Murdoch came up behind defendant, the latter looked over his shoulder at Murdoch. After Murdoch repeatedly ordered defendant to drop the gun, defendant tossed the gun to the ground and started running. Moments later he fell and was arrested. When defendant's gun was recovered, its safety mechanism was not on and there were 15 rounds in its magazine but no round in the chamber.

Defendant was convicted of, among other things, assault with a firearm on a peace officer and attempted murder. The Court of Appeal affirmed the conviction for attempted murder, but it reversed the assault conviction in light of this court's holdings in *People v. Colantuono* (1994) 7 Cal.4th 206 [26 Cal.Rptr.2d 908, 865 P.2d 704] (*Colantuono*) and *People v. Williams* (2001) 26 Cal.4th 779 [111 Cal.Rptr.2d 114, 29 P.3d 197] (*Williams*). In *Colantuono*, this court held that the crime of assault requires the commission of "an act that by its nature will probably and *directly* result in injury to another" (7 Cal.4th at p. 214, italics added), that is, an act "immediately antecedent to battery" (*id.* at p. 216). In *Williams*, this court reiterated that view, stating that assault requires " ' "an act done toward the commission of a battery" ' " that must " ' "*immediately*" ' precede the battery" (26 Cal.4th at p. 786, italics added); that is, it requires an act where the " ' "next movement would, *at least to all appearance*, complete the battery . . ." ' " (*ibid.*). Applying those decisions here, the Court of Appeal held that because defendant did not point the gun at Sergeant Murdoch, no reasonable person could conclude that defendant's conduct would directly and immediately result in the unlawful use of force upon another.

Reversing the Court of Appeal's judgment, the majority here reinstates the assault conviction. The majority is wrong; the Court of Appeal was right.

Under the test set forth in *Colantuono, supra,* 7 Cal.4th 206, and in *Williams, supra,* 26 Cal.4th 779, the pertinent inquiry is whether in this case defendant's "next movement" would have completed the battery. (*Colantuono, supra,* at p. 216; *Williams, supra,* at p. 786.) The answer is "no." To fire the gun at the pursuing Sergeant Murdoch, defendant would have had to turn around (instead of just looking over his shoulder at Murdoch), pull back the slide of the gun to release a round into the firing chamber, aim the gun at Murdoch, and then pull the trigger. Had defendant pointed his gun at

Murdoch after releasing a round into the chamber, he unquestionably would have committed an assault. But, as just explained, that was not the scenario here.

Although defendant's conviction for assault was improper—because he did not commit an act that would have directly and immediately resulted in injury (*Williams, supra,* 26 Cal.4th at p. 787; *Colantuono, supra,* 7 Cal.4th at p. 217)—he was properly convicted of attempted murder, as the Court of Appeal concluded. An anomalous conclusion? Yes, but one compelled by *Colantuono* and *Williams.* Unlike the requisite act for assault, the act necessary for attempted murder and other criminal attempts "need not be the last proximate or ultimate step toward commission of the substantive crime." (*People v. Kipp* (1998) 18 Cal.4th 349, 376 [75 Cal.Rptr.2d 716, 956 P.2d 1169].)

The majority tries to find a way around its holdings in *Colantuono, supra,* 7 Cal.4th 206, and *Williams, supra,* 26 Cal.4th 779. First, it asserts that this case concerns only the nature of the *act* required to commit an assault, whereas *Colantuono* and *Williams* concerned the *mental state* required to commit an assault. (Maj. opn., *ante,* at pp. 1167–1169, 1171.) That effort fails, because under this court's decisions the requisite act and intent are *inseparable.* (*Williams, supra,* 26 Cal.4th at p. 786 ["a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such an intent"]; see *Colantuono, supra,* 7 Cal.4th at p. 217 [the intent of committing a battery is subsumed in an act that by its nature will likely result in physical force on another].) The majority cannot have it both ways.

Second, the majority asserts that defendant's assault conviction can be affirmed by viewing the requisite act for assault as requiring only the ability to inflict injury on the "present occasion." (Maj. opn., *ante,* at pp. 1167–1168, 1171, 1174, 1176.) This is an apparent attempt by the majority to relax the requirement of *Williams, supra,* 26 Cal.4th at pages 787–788, and *Colantuono, supra,* 7 Cal.4th at page 217, that assault requires the commission of an act that "directly" and "immediately" precedes a battery. Here, defendant's act did not satisfy that requirement. Therefore, as construed by the majority, the phrase "present occasion" encompasses an act that goes beyond the test articulated in *Williams* and in *Colantuono,* unsettling the law of assault.

The way out of this legal morass is easy. Simply recognize that assault is a specific intent crime, as I advocated in my dissents in *Colantuono, supra,* 7 Cal.4th at pages 225–228, and in *Williams, supra,* 26 Cal.4th at pages 791–796. A specific intent crime is an offense that requires the defendant to not only intend to do an act but to also intend to achieve a consequence, such

as (in the case of assault) the intent "to commit a violent injury on the person of another" (Pen. Code, § 240), whereas a general intent crime requires only that the defendant intend to do the act (*People v. Hood* (1969) 1 Cal.3d 444, 456–457 [82 Cal.Rptr. 618, 462 P.2d 370]). That assault is a specific intent crime is established by the legislative history of the offense; by the statutory language expressly stating that assault requires an attempt (Pen. Code, § 240), which in turn requires a specific intent (*id.*, § 21a); and by this court's commonsense observation in *People v. Carmen* (1951) 36 Cal.2d 768, 775 [228 P.2d 281], that one "could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person." (See *Williams, supra*, 26 Cal.4th at pp. 791–796 (dis. opn. of Kennard, J.); *Colantuono, supra*, 7 Cal.4th at pp. 225–228 (conc. & dis. opn. of Kennard, J.).)

Here, defendant had the specific intent to inflict injury on the pursuing Sergeant Murdoch, as shown by the jury's conviction of him for attempted murder, a crime that requires the specific intent to unlawfully kill. (Pen. Code, §§ 21a, 664, subd. (e), 187, 189.) With the specific intent to injure Sergeant Murdoch, defendant pointed a loaded gun in the direction where he expected Sergeant Murdoch to appear. Thus, if assault were viewed as a specific intent crime, as I think it should be, defendant would be guilty of assault as well as attempted murder. But under this court's existing decisions, assault is a general intent crime that requires an act where the "next movement" would complete the battery. (*Williams, supra*, 26 Cal.4th at p. 786; *Colantuono, supra*, 7 Cal.4th at p. 216.) As explained above (*ante*, at pp. 1167–1168), here defendant's next movement would not have completed the battery and therefore, as the Court of Appeal correctly concluded, he cannot be convicted of assault.[1]

---

[1] The majority cites a number of decisions to support its conclusion that defendant's act was sufficiently close to inflicting injury to sustain the assault conviction. The cases, however, are inapposite. Seven of the cited cases, *People v. Lee Kong* (1892) 95 Cal. 666 [30 P. 800], *People v. Yslas* (1865) 27 Cal. 630, *People v. McMakin* (1857) 8 Cal. 547, *People v. Thompson* (1949) 93 Cal.App.2d 780 [209 P.2d 819], *People v. Simpson* (1933) 134 Cal.App. 646 [25 P.2d 1008], and *People v. Hunter* (1925) 71 Cal.App. 315 [235 P. 67], were decided when specific intent to injure was required for an assault (see, e.g., *People v. Coffey* (1967) 67 Cal.2d 204, 221–222 [60 Cal.Rptr. 457, 430 P.2d 15]; *People v. Carmen, supra*, 36 Cal.2d at p. 775; *People v. Dodel* (1888) 77 Cal. 293, 294 [19 P. 484]; *People v. Bird* (1881) 60 Cal. 7, 8) and the assaultive act did not have to be the immediate antecedent of harm as required by *Williams, supra*, 26 Cal.4th 779, and *Colantuono, supra*, 7 Cal.4th 206. *People v. Raviart* (2001) 93 Cal.App.4th 258, 266–267 [112 Cal.Rptr.2d 850], makes the same mistake as the majority. *People v. Ranson* (1974) 40 Cal.App.3d 317, 321 [114 Cal.Rptr. 874], viewed assault as a specific intent offense and was decided accordingly. *People v. Valdez* (1985) 175 Cal.App.3d 103, 113 [220 Cal.Rptr. 538], concerns the effect of the victim's avoidance or preventative measures, an issue not presented here.

I would affirm the judgment of the Court of Appeal.

Werdegar, J., concurred.