Filed 5/3/13  In re J.M. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | B241006 (Los Angeles County Super. Ct. No. MJ20720) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Benny C. Osorio, Judge.  Affirmed.

Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

J.M., a minor, appeals from the dispositional order. The juvenile court found that on January 2, 2012, the minor committed assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), a felony. The juvenile court sustained the Welfare and Institutions Code section 602 petition and released the minor home on probation. We affirm the juvenile court order.

## II. THE EVIDENCE

On January 2, 2012, the minor was at home with his mother and several siblings. An aroma of marijuana was coming from the minor's room. A brother, N.C., confronted the minor. An argument then ensued between the minor and his mother. They were yelling back and forth. N.C. thought the minor was going to hit their mother. N.C. tried to restrain the minor. This occurred while the minor was seated on his bed. N.C. stood over the minor. N.C. put one hand on the minor's shoulder. The minor lunged out with his foot. The minor kicked N.C. in the throat. N.C. hit the minor two or three times in the face and chest. The fight lasted about a minute. The two combatants were separated by family members.

The minor was still upset. He was breathing heavily and seemed angry. N.C. left the room. Seconds later, N.C heard someone say the minor had a knife. N.C. found the minor in the bathroom with a 9- to 10-inch steak knife. When N.C. entered the bathroom, another brother, M.M., was holding the minor against the wall. M.M. had both the minor's hands up against the wall. M.M. was 6 feet, 6 inches tall and weighed over 200 pounds. The minor was 5 feet, 6 or 7 inches tall and weighed approximately 130 pounds. The minor, who had the knife in his hand, was trying to break free. As N.C. entered the bathroom, M.M. was trying to take the knife from the minor's hand. The minor was struggling. N.C. stood in front of the minor, inches away. The minor said, "I'm going to kill you." The minor jerked the knife in N.C.'s direction. When testifying, N.C. was

2

asked, "And if he wasn't being restrained, would he be within reach of you?" N.C. testified in response, "Yes." The juvenile court asked N.C., "When the arms were going down, who was in the trajectory of getting hit?" N.C. responded, "I was." N.C. tried to remove the knife from the minor's hand. N.C. was holding onto the minor's hand. N.C. could feel the force in the minor's wrist. The minor was moving the knife upward, in N.C.'s direction. At that point both N.C. and M.M. were holding onto the minor's arm. They did not lose their grip. As long as they did not lose their grip, the minor could not stab either one of them with the knife. Family members were yelling at the minor to drop the knife. They were threatening to call the police. The minor dropped the knife, walked out of the bathroom and said, "I just proved you guys are a bunch of bitches." On cross-examination, N.C. was asked, "[W]ith your brother who was six-four, approximately 230 pounds [and] had a grip on both hands, did it appear to you that if [the minor] wanted to, he could swing the knife?" N.C. responded, "Oh, no."

M.M. saw the minor go into the bathroom and close and lock the door. M.M. was standing outside the bathroom door when the minor emerged. The minor had a steak knife in his hand. The minor was cussing at N.C. The minor was trying to go after N.C. again. M.M. grabbed the minor's wrists. M.M. tried to take the weapon from the minor's hand. N.C. came up behind M.M. and tried to get the weapon out of the minor's hand. The minor was struggling. The minor turned the knife in N.C.'s direction. M.M. always maintained a grip on the minor's wrists. But M.M. was unable to "fully control" the minor's actions. The struggle with the knife lasted as long as five or six minutes.

Deputy Jason Schmoker spoke to the minor following the altercation. The minor was advised of his *Miranda* rights. Deputy Schmoker testified: "I asked him if he tried to stab his brother. [¶] . . . He said, yes, after an argument he had lunged forward at him with a knife. [¶] . . . He said he tried to scare him."

3

## III. DISCUSSION

The minor argues there was insufficient evidence he engaged in willful conduct which a reasonable person would realize was likely to result in a battery. The minor reasons that he was pinned against the wall and could not swing the knife at anyone even if he had wanted to. Further, N.C. was within the trajectory of the knife only because he deliberately placed himself there. And, the minor cites to his post-arrest statement. As noted, the minor admitted trying to scare N.C. The minor further argues there was insufficient evidence to show he had the present ability to commit a battery. He was restrained and unable to move. Therefore, he was incapable of striking anyone with the knife. This contention must be rejected given the standard of appellate review. The standard of review in criminal proceedings involving minors is the same as that involving adults. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.) We view the evidence in the light most favorable to the adjudication and determine whether any rational trier of fact could have sustained the petition's allegations beyond a reasonable doubt. (*In re V.V., supra,* 51 Cal.4th at p. 1026; *People v. Medina* (2009) 46 Cal.4th 913, 924-925, fn. 2.)

Penal Code section 245, subdivision (a)(4) makes it a crime to commit an assault upon the person of another by any means of force likely to produce great bodily injury. Penal Code section 240 defines an assault, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Assault is a general intent crime. (*People v. Chance* (2008) 44 Cal.4th 1164, 1167; *People v. Williams* (2001) 26 Cal.4th 779, 788.) Our Supreme Court has explained: "The . . . substantive offense of assault . . . does not require a specific intent to injure a particular victim . . . . '[A]lthough the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm.' [Citation.]" (*In re Tameka C.* (2000) 22 Cal.4th 190, 198; accord, *People v. Williams, supra,* 26 Cal.4th at p. 790.) Our Supreme Court has further held: "[The present ability element] is satisfied when 'a defendant has attained the means

4

and location to strike immediately.' [Citations.] In this context, however, 'immediately' does not mean 'instantaneously.' It simply means that the defendant must have the ability to inflict injury on the present occasion. Numerous California cases establish that an assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term." (*People v. Chance, supra,* 44 Cal.4th at pp. 1167-1168, fn. omitted; accord, *People v. Murray* (2008) 167 Cal.App.4th 1133, 1139.) Further, our Supreme Court has explained, "[W]hen a defendant equips and positions himself to carry out a battery, he has the 'present ability' required by [Penal Code] section 240 if he is capable of inflicting injury on the given occasion, . . . even if the victim or the surrounding circumstances thwart the infliction of injury." (*People v. Chance, supra,* 44 Cal.4th at p. 1172; accord, *People v. Valdez* (1985) 175 Cal.App.3d 103, 106-107, 112.)

Here, the minor, who was angry, armed himself with a dangerous weapon. The minor attempted to stab N.C. Although restrained, the minor struggled and aimed the weapon at N.C. while yelling, "I'm going to kill you." N.C. was in close proximity to the minor during the struggle, which lasted up to six minutes. The minor could have broken free from his brother's grip and inflicted serious harm. When questioned while in sheriff's custody, the minor admitted lunging at N.C. while armed with the knife. This was substantial evidence the minor committed an assault with force likely to inflict great bodily injury.

*People v. Dodel* (1888) 77 Cal. 293, 293-295, on which the minor relies, is distinguishable. First, the Supreme Court reversed the conviction for instructional error as to the elements of an assault with a deadly weapon, not for evidentiary insufficiency. Second, the defendant in *Dodel* drew a knife from his pocket. And the defendant moved away from the purported victim. The defendant did not move towards the alleged victim. The defendant never got close enough to strike the victim with the knife. And he never made any attempt to use the knife. Here, the minor did not merely display the knife. The

5

minor was struggling to maintain control of the knife and was aiming it in N.C.'s direction.

## IV.  DISPOSITION

The juvenile court order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.


We concur:


KRIEGLER, J.


O'NEILL, J.[*]

---

[*]     Judge of the Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.