Filed 3/19/25  P. v. Galindo CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PEDRO GONZALEZ GALINDO,<br><br>    Defendant and Appellant. | 2d Crim. No. B331990<br>(Super. Ct. No. 2021016519)<br>(Ventura County) |

Pedro Gonzalez Galindo appeals following a trial at which a jury convicted him of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 1) and misdemeanor vandalism (§ 594, subd. (a)(2); count 2).[1]  The trial court placed appellant on a grant of felony probation for 36 months subject to terms and conditions, including 365 days to be served in county jail.

Appellant contends the evidence was insufficient as to the assault with a deadly weapon count because he lacked the

---

[1] Undesignated statutory references are to the Penal Code.

present ability to injure his ex-girlfriend when he cut a brake line in her car. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Cynthia Nodinesmith and appellant were in a relationship for about five years and were engaged at one point. Nodinesmith described appellant as jealous. She broke up with him after learning he was having an affair. Appellant called and texted Nodinesmith, contacted her family, and sent flowers to convince her to reunite. About two months later, the two reconciled. In August 2020, they broke up again because appellant "still had issues with jealousy and was not wanting to discuss the cheating . . . ."

Appellant sent Nodinesmith long texts and one day called her approximately ten times consecutively until she picked up. Nodinesmith told appellant she wanted him to stop and that she was "done." In the ensuing weeks, appellant sent her numerous text messages in an effort to reconcile once again. Nodinesmith's responses were very limited and short. She did not want to encourage appellant.

On October 18, 2020, Nodinesmith arranged to meet a friend, Michelle Cassiadoro, at the Santa Clara parking garage in Ventura. Nodinesmith had no vehicle issues during the roughly 40-minute drive to Ventura. She parked on the garage's fourth floor. She and her friend walked out to Main Street. Based on surveillance video, appellant's car entered the garage at around the same time Cassiadoro was waiting for Nodinesmith on the first floor. At one point, appellant's car was about 20 to 30 feet from Nodinesmith. Appellant's car was in the garage for about seven minutes.

Earlier in the day, appellant had met his friend Craig Young at Ventiki, a bar in downtown Ventura. They sat outside

2

in the patio area right off Main Street.  From that patio, you could see cars going by.

When Nodinesmith returned to her car after spending a little over two hours in downtown Ventura, she noticed a yellow stream running from her front driver's side tire.  Nodinesmith told Cassiadoro she thought it could be urine.  Nodinesmith drove away.  As she went downhill, she noticed "play" in her brakes.  As she was about to merge onto the freeway, her dashboard brake light came on.

Upon entering the freeway, Nodinesmith moved to the slow lane and started applying her brakes.  She put her foot all the way down, and she had no brakes.  As she coasted in the slow lane, she spoke on the phone with her father, Gerald Griffin.  Eventually, he suggested she meet him at his house in Camarillo, and he would examine the car.  Nodinesmith made it to the house.

Griffin saw no brake fluid in the master cylinder.  When he added fluid to the car, fluid ended up on the ground.  The next day, Griffin slowly drove the car about three to four blocks to his mechanic.  That mechanic indicated the brake line had been intentionally cut.

Law enforcement recovered Channellock cable cutters from appellant's vehicle.  According to criminalist Manuel Munoz, cuts on the brake line were consistent with a cutting tool that has a shearing motion.  Channellock cable cutters use a shearing motion.  Appellant's Channellock cable cutters easily cut through sample brake lines Munoz tested.  Munoz's analysis revealed "significant agreement in certain areas" but was ultimately inconclusive as to whether appellant's cable cutters cut Nodinesmith's brake line.  Nodinesmith's brake line was accessible through the wheel well.

Appellant testified he had no idea Nodinesmith would be in downtown Ventura on the day he met Craig Young at Ventiki. Appellant went from Ventiki to a nearby coffee house but then left. Appellant craved a drink that was sold at Palermo's, a coffee house located about half a mile away. Appellant drove to the Santa Clara parking structure to see if he could quickly find a spot.

Appellant went as high as the third level before leaving the structure. There were many cars, and he did not "want a coffee that bad." The video showed an open spot, but appellant testified he missed it. He denied seeing Nodinesmith's car in the structure and touching her brake lines.

DISCUSSION

Section 245, subdivision (a)(1) proscribes "assault upon the person of another with a deadly weapon or instrument other than a firearm . . . ." (§ 245, subd. (a)(1).) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The present ability element "is satisfied when 'a defendant has attained the means and location to strike immediately.'" (*People v. Chance* (2008) 44 Cal.4th 1164, 1168 (*Chance*).) "In this context, however, 'immediately' does not mean 'instantaneously.' It simply means that the defendant must have the ability to inflict injury on the present occasion." (*Ibid.*, footnote omitted.)

"Thus, it is a defendant's action enabling him to inflict a present injury that constitutes the actus reus of assault. There is no requirement that the injury would necessarily occur as the very next step in the sequence of events, or without any delay." (*Chance*, *supra*, 44 Cal.4th at p. 1172.) "Numerous California cases establish that an assault may be committed even if the defendant is several steps away from actually inflicting injury, or

4

if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term."  (*Id*. at p. 1168.)

Appellant argues the evidence was insufficient as to the assault with a deadly weapon count.  Appellant's reply brief states the parties' "only disagreement is whether or not appellant had the 'present ability' to injure Ms. Nodinesmith when he cut a brake line in her car."  He contends "the possibility of injury to Ms. Nodinesmith was a far cry from 'the very next step' after [he] cut the [brake] line, and that the injury would have occurred, if at all, on a 'different occasion' from the cutting of the line . . . ."  Appellant asserts he "was not able to strike 'immediately' as Ms. Nodinesmith was not in the vicinity when the brake line was cut and there was no way to predict when she would return."  We conclude the evidence is sufficient.

"Our task is clear.  'On appeal "we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"  (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)  "In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'"  (*People v. Avila* (2009) 46 Cal.4th 680, 701.)  "'We do not reweigh evidence . . . .  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'"  (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

Substantial evidence supports the jury's conclusion that appellant committed assault with a deadly weapon when he cut Nodinesmith's brake line.  Appellant adopts an unduly narrow construal of present ability.  As *Chance* explains, "'immediately' does not mean 'instantaneously.'"  (*Chance*, *supra*, 44 Cal.4th at

5

p. 1168.)  Appellant need only have had the ability to inflict injury on the present occasion.  That injury need not operate "as the very next step in the sequence of events, or without any delay." (*Id.* at p. 1172.)  Here, the present occasion encompasses Nodinesmith driving her car away after about two hours.  That delay was modest, and the steps between appellant's act and Nodinesmith's potential injury were few.  Theoretical speculation about whether Nodinesmith might have taken more time to return to her car does not relieve appellant of culpability for assault.  (Cf. *People v. Marsh* (2019) 37 Cal.App.5th 474, 486 [concluding a jury could reasonably find that cutting the victim's brake lines was likely to produce death or great bodily injury].)

Appellant's reliance on *People v. Williams* (2001) 26 Cal.4th 779 is misguided.  As our Supreme Court later clarified in *Chance*, "*Williams* involved only the mental state required for assault, and did not construe the present ability requirement." (*Chance*, *supra*, 44 Cal.4th at p. 1169.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CODY, J.

We concur:


GILBERT, P. J.　　　　　YEGAN, J.


6

Catherine M. Voelker, Judge
Superior Court County of Ventura

_____

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.