[No. B122687. Second Dist., Div. Three. Feb. 10, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CIPRIANO GUTIERREZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III2. through 5. and IVB. and C.

COUNSEL

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Brad D. Levenson and Theresa A. Cochrane, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCHNEIDER, J.*—

I

INTRODUCTION

Defendant and appellant Cipriano Gutierrez was charged with one count of second degree robbery in violation of Penal Code section 211.[1] It was further alleged that Gutierrez personally used a knife in the commission of the offense (§ 12022, subd. (b)(1)). It was also alleged Gutierrez had been convicted of one serious or violent felony (§§ 1170.12, subds. (a)-(d), & 667, subds. (b)-(i)), as well as two additional felonies within the meaning of section 1203, subdivision (e)(4).

Following the denial of his motion to bifurcate the issues of guilt and the validity of his prior convictions, a jury found him guilty on the charged offense. The jury also found true the allegation that he had personally used a knife. After a court trial, the allegation that Gutierrez had suffered a prior conviction which qualified as both a "strike" and a five-year serious felony enhancement was found true.

Gutierrez was sentenced to state prison for a total of 11 years, given credit for 210 days of presentence custody and ordered to pay a restitution fine of $200 (pursuant to § 1202.4, subd. (b)). The trial court reserved jurisdiction to order direct victim restitution pursuant to section 1202.4, subdivision (f).[2] Gutierrez timely filed a notice of appeal from the judgment of conviction.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Penal Code.

[2] The abstract of judgment does not reflect these restitution orders.

## II

### Factual Background

*People's Case.*

On December 11, 1997, at approximately 7:00 p.m., Umberto Claro, his wife and two-year-old son were in the parking lot of a market in El Monte. Gutierrez and another male Hispanic approached the family, after which Gutierrez asked Claro if he knew the time. Gutierrez and his companion then stood on either side of Claro, each holding a pocket knife against Claro's ribs. Gutierrez's companion asked Claro for his watch and money, while Gutierrez urged his cohort to "hurry up." Claro handed his watch and $120 to Gutierrez's companion, following which the latter handed these items to Gutierrez. Gutierrez and the other male Hispanic entered what appeared to be a green minivan and drove away.

Soon after the minivan drove away, Claro was approached by a man who gave him a piece of paper with a license plate number written on it. The Claros went home, dropped off their groceries and then proceeded to the police station to report the robbery. El Monte Police Officer Juan Casados interviewed Claro at the police station. Claro gave Officer Casados the piece of paper with the license plate number. Casados ran the license plate number. He received information that the license plate number had been assigned to a 1994 GMC van registered in El Monte to Raymond Gutierrez (Raymond). On December 18, 1997, Detective Santos Hernandez and his partner, Detective Carlson, proceeded to Raymond's residence. There they observed a blue van pull into the driveway. The license plate number on the van matched the license plate number on the sheet of paper Claro had given the police. Raymond was driving the van and Gutierrez was in the right front passenger seat. When Detective Hernandez and his partner first approached the van, Gutierrez stated, "What the fuck do you guys want?" After Hernandez explained that the police were investigating a robbery, Raymond and Gutierrez agreed to accompany the police officers to the police station. There Hernandez photographed Gutierrez and Raymond and prepared a photographic "six-pack" for each.

Detective Hernandez showed the two 6-packs to Claro. Claro was unable to identify any suspects from the first six-pack containing Raymond's photograph, but did select Gutierrez's photograph from the second six-pack and identified him as one of the robbers. At trial, Claro was certain that appellant was one of the men who robbed him. Claro's wife also identified

Gutierrez in court and from a photographic lineup. She testified he was one of the men who robbed her husband at knifepoint.[3]

## III

### CONTENTIONS

Gutierrez attacks his conviction on the following grounds:

1. The court denied Gutierrez his constitutional right to confront a crucial witness and abused its discretion when it admitted into evidence the piece of paper which purported to contain the license plate number of a van used in the commission of the offense.

2.-5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . : . .

## IV

### DISCUSSION

A. *The Court Did Not Commit Error When It Admitted into Evidence the Piece of Paper Which Purported to Contain the License Plate Number of a Van Used in the Commission of the Offense.*

During the testimony of Umberto Claro, the robbery victim, the following testimony was elicited: "Q Now, sir, at some point were you approached by someone that gave you some information? [¶] A The one who gave me the license plate. [¶] Q The gentleman that gave you the license plate, had you ever seen that man before? [¶] A No. [¶] Q Did he just walk up to you? [¶] A Yes. [¶] Q What, if anything, did he say to you, sir? [¶] MR. PEREZ [Defense Counsel]: Objection. Hearsay."

At the sidebar that followed, the court asked the prosecutor for the hearsay exception that authorized the admission of this evidence. The prosecutor replied "Spontaneous statement. Not offered for the truth of the matter asserted. It's simply offered to show that it had a certain effect on the hearer. The victim . . . ."[4] The court sustained the objection, concluding that the statement was not "a spontaneous statement at this points [*sic*] in time."

---

[3]The defense evidence will be discussed in detail in the section of this opinion dealing with the trial court's preclusion of the testimony of two defense witnesses.

*See footnote, *ante*, page 170.

[4]The prosecutor's explanation is perplexing. If the witness's statement was not offered for the truth of the matter asserted, it was not hearsay at all and no hearsay exception was required to be found. It is clear, however, that the information on the piece of paper was being offered for the truth of the matter asserted. Specifically, only if the information contained on

The trial resumed in open court. The prosecutor asked the witness whether he was given a sheet of paper by "a gentleman that you didn't know?" The witness responded "yes." After the prosecutor produced the piece of paper and started to identify a license plate number that was on it, counsel for Gutierrez interposed hearsay and foundation objections. Another sidebar followed. The prosecutor indicated that he would not ask the witness what the person who gave him the piece of paper had said. "I am simply going to ask if it was given to him." The prosecutor indicated he also expected to elicit from the witness that the witness wrote his name on the piece of paper. Upon inquiry by the court, the witness testified that everything else on the piece of paper had been written by the person who gave him the piece of paper. When asked by the court if he had seen the person "write that on that piece of paper?" the witness replied "[h]e just brought the paper." The prosecutor then stated the reason for offering the piece of paper: "[Mr. Turner (the prosecutor)]: Your Honor, it's being offered to show that this is the license plate that was given to this victim during the robbery, given to him with that license plate on it. And the court has precluded any line of questioning as to what was said during this transaction, so the piece of paper speaks for itself. [¶] And the officer will testify, the investigating officer will testify that during the course of his follow-up investigation he ran the plate and it led to the defendant in this case."

The court then reiterated its earlier ruling precluding any statement made by the unidentified person to the witness. The court then permitted the prosecutor to attempt to lay a further foundation under Evidence Code section 1240 (the spontaneous declaration exception to the hearsay rule). The court stated: ". . . I do agree that the slip of paper does purport to narrate, describe, or explain an act perceived by the declarant, the person who wrote this paper, . . . does purport to describe an event. The question the court has is whether it was spontaneously made while the declarant was under the stress of excitement caused by such perception."

The following examination then took place outside of the jury's presence: "Q By Mr. Turner: Sir, after your property was taken did someone approach you with information? [¶] Did someone approach you with that sheet of paper? [¶] A Just the man, the one who took the license plate. [¶] Q How soon after the robbery did he give you that information? [¶] A When the vehicle left. [¶] Q And when he gave you that information what, if anything, did he say to you? [¶] A Just that he took down the license plate. That's all. [¶] Q Of the vehicle? [¶] A Yes. [¶] Q Did he tell you that he did not want to get involved? [¶] A No, he didn't mention it. [¶] Q Did you ask him for

---

the piece of paper was true would it be relevant that the police ran the license plate number contained on the paper and that that act led the police to Raymond and Gutierrez.

this information or did he just bring it to you? [¶] A He came to me. [¶] Q And were you asked by the police officer to put your name on that sheet of paper? [¶] A Yes. [¶] Q And is that the only thing that you wrote on that sheet of paper? [¶] Yes. [¶] Q And the gentleman that gave that to you, I believe you testified earlier that you didn't know him and you'd never seen him before; is that correct? [¶] A Never, ever. [¶] Q Have you seen him since that date? [¶] A No."

Following the prosecutor's examination, the court conducted its own examination. "Q By the Court: Sir, in terms of minutes, so that I understand the sequence, you were robbed, the vehicle left? [¶] A Yes. [¶] Q The person approached you with this information. In terms of minutes, give me a time frame of when this happened, how quickly or how slowly? [¶] A Everything was fast, from three to four minutes. [¶] Q Now when the gentleman gave you this particular piece of paper with information on it, what did he say to you, if anything? [¶] A That he just took the license plate. [¶] Q How would you describe the manner in which he approached you? How did he appear to you? [¶] A The person? [¶] Q Yes. In terms of his physical appearance and his manner of speaking. [¶] A Well, I saw him quite a little like nervous. [¶] Q What gave you the impression that he was nervous? [¶] A Scared. [¶] Q What gave you that impression? [¶] A For problems, his problems that he would have, or he was scared. [¶] Q When he gave you this piece of paper did he say anything else to you? [¶] A No. [¶] Q Did you request any information from him in terms of his name or anything of that nature? [¶] A No."

After conducting its own examination, the court ruled: "All right. The court will find it under 1240 of the Evidence Code to be an exception to the hearsay rule. I will allow the paper in. People made an offer of proof that there was some discussion as to this declarant's fear of being mark [*sic*]. I didn't hear anything from this witness, so I will preclude any statement other than this piece of paper from the informant to this witness."

Following the court's ruling, the following colloquy took place between the prosecutor and the court: "Mr. Turner: For clarification, I am only permitted to ask this witness if he received People's 3 from someone at that location? [¶] The Court: Yes, limited to this piece of paper. You may address the word ["]Placas["] on it, how he interpreted that, and the contents of this paper I'll allow in. [¶] Mr. Turner: But not the part where he said, I wrote the license plate down? [¶] The Court: No. I will not allow any statement, just the written paper that was given to him."

After the sidebar proceeding concluded, the trial resumed in open court. The witness then testified that the sheet of paper (exhibit 3) was given to him

by the unidentified man. The witness also testified that he had never seen that man before. Thereafter, and over defense objection, exhibit 3 was admitted into evidence.

In his opening brief Gutierrez contended the admission of the piece of paper with the license plate number on it deprived him of his constitutional right to confront a crucial witness and constituted an abuse of discretion on the part of the trial court. The record reflects Gutierrez's counsel never objected to the admission of the piece of paper containing the license plate on the ground it would violate Gutierrez's right to confront a crucial witness.[5] Gutierrez's counsel failure to object on the ground that a confrontation clause violation occurred is fatal to that claim on appeal. (*People v. Alvarez* (1996) 14 Cal.4th 155, 186 [58 Cal.Rptr.2d 385, 926 P.2d 365].) It remains to be decided, however, whether the piece of paper with the license plate number on it was properly admitted as a spontaneous declaration, and, if not, whether that error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)[6] ▉ "To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." (*Showalter v. Western Pacific R.R. Co.* (1940) 16 Cal.2d 460, 468 [106 P.2d 895]; accord, *People v. Poggi* (1988) 45 Cal.3d 306, 318 [246 Cal.Rptr. 886, 753 P.2d 1082].)

Gutierrez's first line of attack on the admission of the piece of paper containing the license plate number is that an insufficient foundation was laid by the prosecutor. Specifically, based on the evidence that has been delineated above, Gutierrez argues that no evidence was adduced at trial to show either that the declarant (the person who handed the piece of paper to the robbery victim) had seen all or part of the robbery or when the writing was made.

In *People v. Anthony O.* (1992) 5 Cal.App.4th 428, 433-434 [6 Cal.Rptr.2d 794], the court held that "[t]he foundation, or preliminary fact [required to admit a spontaneous declaration], required only proof by a preponderance of

---

[5]Counsel's only objection was on hearsay and foundation grounds.

[6]Since Gutierrez failed to preserve his confrontation clause claim, any error in admitting the piece of paper with the license plate number on it must be analyzed under the harmless error standard of *Watson* and not the beyond a reasonable doubt standard applicable to constitutional violations. (*Olden v. Kentucky* (1988) 488 U.S. 227, 231-232 [109 S.Ct. 480, 483, 102 L.Ed.2d 513].)

the evidence. [Citation.] In making its factual determination the trial court exercises discretion. [Citation.] If substantial evidence supports the exercise of that discretion we must uphold it. [Citation.]"

■ This court is unable to conclude that the trial court abused its discretion in impliedly finding the victim had seen all or part of the robbery. Although no direct evidence was introduced on the point, there was evidence from which it could be inferred the declarant had witnessed the robbery.[7] As respondent states in its brief: "According to Claro, he was robbed in the parking lot of a market and the two suspects got into a mini-van and drove away. . . . The unidentified man then approached Claro and gave him the license plate number of the mini-van, which he had written down. . . . Had the unidentified man not witnessed the robbery, there would have been no reason for him to write down the license plate number and give it to Claro."

Additionally, since Claro (the robbery victim) testified that the piece of paper was handed to him three to four minutes after the robbery, it necessarily follows the statement was written during that period of time. This period of time—three to four minutes—is not so long as to render the piece of paper inadmissible as a spontaneous declaration,[8] assuming the evidence supports the conclusion that the statement was made spontaneously while the declarant was under the stress of excitement caused by such perception.[9] It is this issue to which the court now turns.

---

[7]In McCormick on Evidence, it is stated: "Another major issue frequently encountered with excited utterances is whether the declarant meet[s] the tests of competency for a witness. In a modified manner the requirement that a witness have had an opportunity to observe that to which he or she testifies is applied. Direct proof is not necessary; if the circumstances appear consistent with opportunity by the declarant, the requirement is met." (2 McCormick, Evidence (4th ed. 1992) § 272, p. 221, fn. omitted.) (See also *McLaughlin v. Vinzant* (1st Cir. 1975) 522 F.2d 448, 451.) (From the content of the statement and the fact that the witness was somewhere in the vicinity of the shooting, the statement of the declarant was admitted even though no evidence was introduced as to precisely where the witness was and what events she observed.)

[8]Spontaneous declarations have been admitted which involve the same or substantially longer periods of time. (*In re Emilye A.* (1992) 9 Cal.App.4th 1695 [12 Cal.Rptr.2d 294] [one to two days]; *People* v. *Poggi, supra*, 45 Cal.3d 306 (30 mins.); *People* v. *Hughey* (1987) 194 Cal.App.3d 1383 [240 Cal.Rptr. 269] [three to four mins.].)

[9]In 1 Jefferson, California Evidence Benchbook, it is stated: "A statement need not be contemporaneous with the act observed in order to be a spontaneous statement. The length of time between the act observed and the declarant's statement, whether it be several minutes or an hour, is simply a factor to be considered by the trial judge in making a determination of whether the declarant's statement was made spontaneously and under the stress of excitement caused by the event. A statement made long after an observed act should generally be excluded because the declarant would no longer be under stress of excitement from the act observed. But if the elapsed time is accounted for by shock, unconsciousness, or fear, belated statements may still be admissible as spontaneous statements made while the declarant is under the stress of excitement. *People v Farmer* (1989) 47 C3d 888, 904, 254 CR 508 [765

Neither the briefs of the parties nor this court's independent research has disclosed a California appellate decision that discusses the issue of whether a writing may qualify as a spontaneous declaration. It appears, therefore, that the issue presented in this appeal is one of first impression.

The court's research has disclosed, however, a decision of the Louisiana Supreme Court which deals with this very issue. In *State v. Smith* (La. 1973) 285 So.2d 240, a dairy truck driver (Brooks) was working at the back of the freezing compartment of his dairy truck. The defendant approached and demanded Brooks's money. After receiving the money, the defendant instructed Brooks to get into the freezer compartment of the truck. Brooks waited for 30 seconds and then started banging on the truck walls. Immediately thereafter he was let out of the truck by a man. At about the same time he was approached by an unidentified woman who gave him a piece of paper with a license plate number on it. The piece of paper was given to the police, who utilized it to find and arrest the defendant. Although the woman did not testify at trial, the piece of paper was admitted into evidence over the defendant's hearsay objection.

After first explaining that nonstatutory hearsay exceptions existed in Louisiana, and that an excited utterance was one of those exceptions, the court proceeded to a discussion of whether the piece of paper bearing the license plate number qualified for admission under that exception. The court stated: "We find under these facts that the viewing of the robbery was a sufficiently exciting event to render her subsequent declaration (the license number on a slip of paper) reliable. The elapsed time between the event and her communication of her declaration to the victim was sufficiently brief that her act of writing down the license number was a spontaneous reaction to the event she viewed, and not the product of reflection, or likely a fabrication. Certainly the fact that the declaration was written rather than verbal indicates that a slightly greater time elapsed between the event and the declaration than might ordinarily be the case where there is an excited or spontaneous utterance. However, since the victim, to whom the utterance would normally be directed, was not instantly available (he was shut inside the truck) and since transcription of the license number is generally to be assessed more lasting and less subject to mistaken recall, we find that the natural reaction of the bystander would have been to write down the license number of the car driven by the robber." (*State v. Smith, supra,* 285 So.2d at pp. 244-245.)

P.2d 940]." (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 1999) § 13.5, p. 201.) Although the length of time between the act observed and the declarant's statement is only a factor to be considered, it is "an important factor because a spontaneous statement must be made under the immediate influence of the event so as to negate any probability of reflection or fabrication." (*People v. Garcia* (1986) 178 Cal.App.3d 814, 820 [224 Cal.Rptr. 198].)

Although this court concurs with the views expressed in *Smith*, several additional points raised by Gutierrez must be addressed before it is finally determined whether the court correctly admitted into evidence the piece of paper containing the license plate number.

Gutierrez contends that there was no evidence to support the conclusion that the declarant "ever was or remained agitated or nervous as a direct result of what he observed." Gutierrez's contention is contrary to the evidence.

The robbery victim (Claro) testified that, upon being approached by the declarant, the latter appeared to be "quite a little like nervous," i.e., "scared" because of "his problem[s] that he would have." In 2 McCormick, Evidence, *supra*, section 272, page 219, the authors state that "[t]estimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice." (See *McCurdy v. Greyhound Corporation* (3d Cir. 1965) 346 F.2d 224, 226 [evidence that declarant was "extremely nervous" and "shooken up" sufficient to admit statement as part of res gestae];[10] *May v. Wright* (1963) 62 Wash.2d 69 [381 P.2d 601] [spontaneous declaration admitted; victim "seemed upset"].)

In the present case there is a reasonable basis for concluding the declarant became emotionally upset, and continued in that state, because he had just witnessed a robbery at knifepoint. Based on the authorities referred to above, and recognizing that this court is required to review the admission of the spontaneous declaration on an abuse of discretion standard (*People v. Anthony O.*, *supra*, 5 Cal.App.4th 428), it is concluded the trial court did not abuse its discretion by impliedly finding the declarant's statement was made while nervous excitement still dominated his mental processes.

The final issue raised by Gutierrez is that the declarant's statement did not qualify as a spontaneous declaration because it was the product of reflection, not unreflection as required by law. (*People v. Poggi, supra,* 45 Cal.3d 306.) Gutierrez's claim the statement was reflective is based on the fact that "[a]t some point, within a few minutes after the incident, he [the declarant] reflected on the license number he allegedly saw, found paper and pen, and again, allegedly wrote the information down." We believe this kind of mental process is not the type of "reflection" that renders a writing inadmissible as a spontaneous declaration.

It will be recalled that a statement that qualifies as a spontaneous declaration must have been made "before there has been time to contrive and

---

[10]As explained in 2 McCormick, Evidence, *supra*, section 268, pages 206-208 and section 271, pages 211-212, res gestae is the now outdated name of the hearsay exception that is currently called spontaneous declaration.

misrepresent," i.e., " 'while the reflective powers were still in abeyance.' " (*People v. Poggi, supra,* 45 Cal.3d at p. 319, italics omitted.) This court interprets this requirement to mean that the statement must be the product of a reaction to a stimulus (an exciting event such as witnessing a robbery) and not the product of processing information in a deliberative manner.

In the court's view the fact that the declarant had to go through the process of obtaining paper and a writing implement, and then reduce his observation to writing, is not the kind of reflection and deliberate thought that disqualifies a writing from being a spontaneous declaration. In the final analysis the issue is whether the statement has an indicia of reliability so as to permit its admission in the absence of the declarant's testimony. In the court's view the act of reducing an observation to writing a short time after the exciting event makes a statement no less reliable than an identical oral statement made under the same circumstances. The court did not err in admitting the piece of paper with the license plate number on it as a spontaneous declaration.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### DISPOSITION

The judgment of conviction is reversed.

Kitching, Acting P. J., and Aldrich, J., concurred.

On March 3, 2000, the opinion was modified to read as printed above.

---

*See footnote, *ante,* page 170.