Filed 10/2/14  P. v. Lane CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LAMMAR LANE,<br><br>  Defendant and Appellant. | B248475<br><br>(Los Angeles County<br>Super. Ct. No. BA278405) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Modified and remanded; as so modified, affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Lammar Lane guilty of attempted murder and assault with a deadly weapon. The trial court sentenced him to a term of life in prison, plus 29 years. Lane contends: (1) the admission of an unidentified witness's statements violated his confrontation rights; (2) there was insufficient evidence to prove the assault convictions; (3) the trial court erred by failing to instruct on the lesser included offense of simple assault; (4) three Penal Code section 667, subdivision (a)[1] enhancements were improperly imposed; and (5) the trial court miscalculated his custody credits. As the People concede, Lane's fourth and fifth contentions have merit. We order the judgment modified accordingly, and remand for recalculation of Lane's credits. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

a. *The stabbing and assaults.*

Michael Franco was a security guard for the Midnight Mission construction site in downtown Los Angeles. On February 5, 2005, at approximately 5:50 p.m., Franco was patrolling the site when he saw Lane pull a street sign out of the ground and throw it in the street. Lane appeared to be angry. Franco had seen Lane in the area "quite often." Lane, who was wearing a silver or gray suit, walked away, mumbling.

Shortly thereafter Franco saw Lane at the corner of San Julian and 6th streets. Lane opened his jacket and produced three kitchen knives with plastic handles. He placed the knives on the sidewalk as if organizing them, returned them to the inside of his jacket, and walked around the area.

When a pedestrian walked by Lane, Lane pulled out one of the knives and lunged, as if trying to stab the pedestrian. The pedestrian "jerked out of the way" and "took off in

---

[1] All further undesignated statutory references are to the Penal Code.

2

the opposite direction." Lane was so close to the pedestrian that Franco thought he had stabbed him.

Lane left the area. He returned 10 to 15 minutes later, wearing a different suit. As a person pushing a shopping cart came near him, Lane jumped and lunged with a knife towards the person's stomach and chest area. The victim, who was three to four feet away from Lane, managed to place the shopping cart between himself and Lane. The victim ran off with the shopping cart. Lane walked down San Julian Street.

Ten to fifteen minutes later, Lane returned to San Julian between 5th and 6th streets, this time wearing a bright red suit. Tony Chavez, who had formerly resided in the area and volunteered at a homeless shelter, had seen Lane in the vicinity before and recognized him due to his colorful attire. It appeared to Chavez that Lane was "irate." As Chavez walked past, Lane lunged at him with a knife, hitting him in the chest. At first Chavez believed Lane had simply punched him. However, when he saw "a lot of blood" "gushing out" of his chest he realized Lane had stabbed him. Chavez headed toward the police station seeking assistance, but collapsed in a crosswalk. Lane walked away, towards a bus.

b. *The investigation.*

At approximately 5:50 p.m., Los Angeles Police Department (L.A.P.D.) Officers Anthony Bonner and Jesus Castillo were driving near the police station at Wall and 6th streets when a "nervous, agitated" man flagged them down. The man stated that a tall Black man, wearing an orange jumpsuit, had just attempted to stab him with a knife. The man directed the officers to an area near 6th and San Julian streets. The officers told the man to wait there until they returned.

The officers searched for the assailant for five to ten minutes, without success. When they returned to the location where the man had flagged them down, he had left. However, they discovered Chavez lying in the crosswalk just south of 6th Street, bleeding from the upper torso. Officer Bonner summoned fire department paramedics, who transported Chavez to the hospital. Chavez had a collapsed lung, two stab wounds

3

to his chest, and a laceration to his face. He was rushed to surgery and remained in the hospital for two weeks.

Meanwhile, L.A.P.D. Detective Richard Compton and his partner Joel Ruiz were informed via a police broadcast that Lane was on a shelter bus heading to the New Image Shelter. When the officers arrived, the bus passengers were lined up waiting to enter the shelter. Lane was in the line holding a white sheet covered in blood, with bloody clothing inside. A search of the bus revealed three knives. The officers arrested Lane.

In a field showup, Franco identified Lane as the assailant. Several days after the stabbing, Chavez identified Lane as the culprit in a photographic lineup. Both Franco and Chavez identified Lane at trial.

2. *Procedure.*

Trial was by jury. Lane was convicted of the attempted murder of Chavez (§§ 664, 187, subd. (a)), and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found Lane personally used a deadly and dangerous weapon, a knife, in commission of the attempted murder (§ 12022, subd. (b)(1)) and inflicted great bodily injury on Chavez (§ 12022.7, subd. (a)). In a bifurcated proceeding, the trial court found Lane had suffered five prior convictions for serious or violent felonies (§§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d)). It denied Lane's *Romero* motion[2] to strike prior conviction allegations, and sentenced him to life in prison, plus 29 years. It imposed a restitution fine, a suspended parole revocation fine, a court security fee, and a criminal conviction assessment. Lane appeals.

---

**2**       *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

DISCUSSION

1. *Officer Bonner's testimony regarding the anonymous declarant's statements was properly admitted under Evidence Code section 1240 and did not violate Lane's confrontation clause rights.*

a. *Additional facts.*

Prior to trial, the prosecutor sought a ruling on the admissibility of Officer Bonner's testimony describing the statements of the unidentified victim who flagged him and Officer Castillo down. The trial court conducted an Evidence Code section 402 hearing at which Officer Bonner testified as follows. The man told the officers "someone just tried to stab him." He appeared to be "possibly agitated, excited, scared." The conversation lasted approximately 30 seconds. The officers did not obtain the declarant's identifying information, but told him to wait while they searched for the assailant. After speaking with the declarant, they immediately began their search. Officer Bonner explained they "were trying to find a person that was actively doing a crime" and were "trying to stop further—stop the actions of a crime in place." When they were unsuccessful, they returned to the location where the witness had flagged them down. He had left, but Chavez was lying in the crosswalk, bleeding.

The trial court ruled the declarant's statements fell within the hearsay exception for spontaneous statements, Evidence Code section 1240. Defense counsel did not object to the court's ruling or interpose a confrontation clause objection.

b. *Discussion.*

(i) *The anonymous victim's statements qualified as spontaneous declarations and thus were properly admitted under California law.*

We turn first to the question of whether the statements were properly admitted under California law. (See *People v. Blacksher* (2011) 52 Cal.4th 769, 810, fn. 26.) An out-of-court statement made by a nontestifying witness, offered for the truth of the matter asserted, is hearsay. (Evid. Code, § 1200; *People v. Chism* (2014) 58 Cal.4th 1266, 1288.) Evidence Code section 1240 provides an exception to the hearsay rule for spontaneous declarations, that is, statements that purport to describe or explain an act,

5

condition, or event perceived by the declarant, made spontaneously while he or she was under the stress of excitement caused by such perception. (*People v. Lynch* (2010) 50 Cal.4th 693, 751, disapproved on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643; *People v. Gutierrez* (2009) 45 Cal.4th 789, 809-810; *People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1588.) For a statement to qualify as a spontaneous declaration, " '(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been [made] before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' [Citations.]" (*People v. Poggi* (1988) 45 Cal.3d 306, 318; *People v. Lynch, supra,* at pp. 751-752.) The fact a declarant's identity is unknown does not preclude admission of a spontaneous statement. (*People v. Anthony O*. (1992) 5 Cal.App.4th 428, 436; *People v. Gutierrez* (2000) 78 Cal.App.4th 170, 177-178.) Whether the requirements of Evidence Code section 1240 are met is a question of fact largely within the discretion of the trial court, and we review its ruling for abuse. (*People v. Brown* (2003) 31 Cal.4th 518, 540-541; *People v. Riva* (2003) 112 Cal.App.4th 981, 995; *People v. Lynch, supra,* at p. 752.) If substantial evidence supports the court's exercise of discretion we uphold its ruling. (*People v. Brown, supra,* at pp. 540-541; *People v. Gutierrez, supra*, 78 Cal.App.4th at p. 178.)

Here, there was substantial evidence supporting the trial court's admission of the statements under Evidence Code section 1240, a conclusion Lane does not appear to contest. The declarant hailed the officers within minutes after the attempted stabbing, which he said had "just" happened. Certainly, being nearly stabbed, without provocation, while walking down the street would be a startling and traumatic event likely to produce nervous excitement. His statements were not the product of questioning. Officer Bonner testified that the declarant was agitated, excited, and scared. There was thus substantial evidence that the requirements of Evidence Code section 1240 were met, and the trial court did not abuse its discretion in admitting the evidence under that section. (See, e.g.,

6

*People v. Brown, supra,* 31 Cal.4th at p. 541; *People v. Gutierrez, supra,* 78 Cal.App.4th at p. 180; *People v. Provencio* (1989) 210 Cal.App.3d 290, 301-302; *People v. Riva, supra,* 112 Cal.App.4th at p. 995.)

 (ii) *Confrontation clause claim.*

 Lane contends that, even if admissible under Evidence Code section 1240, admission of the unidentified declarant's statements violated the Sixth Amendment's confrontation clause. This contention lacks merit.

 A. *Forfeiture.*

 Preliminarily, the People contend Lane's confrontation clause claim has been forfeited by his failure to object on this ground below. (*People v. Riccardi* (2012) 54 Cal.4th 758, 801; *People v. Redd* (2010) 48 Cal.4th 691, 730 & fn. 19.) We agree. Lane urges that, if the issue has been forfeited, his counsel performed ineffectively for failing to object. (See *People v. Marshall* (1996) 13 Cal.4th 799, 824, fn. 1; *People v. Espiritu* (2011) 199 Cal.App.4th 718, 726.) However, as we explain, because the challenged evidence did not violate Lane's confrontation rights, counsel did not render ineffective assistance by failing to object. (*People v. Linton* (2013) 56 Cal.4th 1146, 1168 [where there was no sound basis for counsel to have objected to admission of evidence, counsel's failure to object cannot establish ineffective assistance]; *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

 B. *Because the statements were nontestimonial, their admission did not violate Lane's confrontation rights.*

 The Sixth Amendment to the United States Constitution gives a criminal defendant the right to confront and cross-examine adverse witnesses. (*People v. Lopez* (2012) 55 Cal.4th 569, 573, 576.) In the seminal case of *Crawford v. Washington* (2004) 541 U.S. 36, the high court overruled its prior precedent and held that the Sixth Amendment generally bars admission at trial of a testimonial out-of-court statement offered for its truth against a criminal defendant, unless the maker of the statement is unavailable to testify and the defendant had a prior opportunity for cross-examination.

(*Id.* at p. 68; *Davis v. Washington* (2006) 547 U.S. 813, 821; *People v. Livingston* (2012) 53 Cal.4th 1145, 1158.)  Here, the person who flagged the officers down did not testify at trial, and Lane had no opportunity to cross-examine him.  Therefore, Officer Bonner's testimony regarding the declarant's statements was admissible only if the statements were nontestimonial.  We independently review the question of whether evidence was admitted in violation of the confrontation clause.  (*People v. Seijas* (2005) 36 Cal.4th 291, 304; *People v. Sweeney* (2009) 175 Cal.App.4th 210, 221.)

To be subject to the confrontation clause, the statements at issue must be "testimonial."  (*People v. Cage* (2007) 40 Cal.4th 965, 969; *Davis v. Washington, supra,* 547 U.S. at p. 821; *People v. Valadez* (2013) 220 Cal.App.4th 16, 32.)  " 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'  [Citations.]"  (*People v. Livingston, supra,* 53 Cal.4th at pp. 1158-1159; *Michigan v. Bryant* (2011) ___ U.S. ___ [131 S.Ct. 1143, 1154]; *Davis v. Washington, supra,* at p. 822; *People v. Valadez, supra,* at p. 33.)  In *Michigan v. Bryant*, *supra*, at page 1150, for example, police found the mortally wounded victim in a parking lot.  His statements identifying the shooter and describing the shooting location to police were not testimonial, because their primary purpose was to enable police to respond to an ongoing emergency.  The statements were also not sufficiently formal:  they were made in an exposed, public area, in a disorganized fashion, before emergency medical services arrived.  (*Id.* at pp. 1160, 1166; see also *People v. Blacksher, supra,* 52 Cal.4th at pp. 811-816.)

Our Supreme Court has distilled six factors to consider when determining whether statements made in the course of police questioning were for the primary purpose of creating an out-of-court substitute for trial testimony that implicates the confrontation clause.  (*People v. Chism, supra,* 58 Cal.4th at p. 1289, citing *People v. Blacksher, supra,*

8

52 Cal.4th at p. 813.) Those factors are: "(1) an objective evaluation of the circumstances of the encounter and the statements and actions of the individuals involved in the encounter; (2) whether the statements were made during an ongoing emergency or under circumstances that reasonably appeared to present an emergency, or were obtained for purposes other than for use by the prosecution at trial; (3) whether any actual or perceived emergency presented an ongoing threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the interrogation had shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances under which it was obtained." (*People v. Chism, supra,* at p. 1289.)

Here, it is readily apparent that the anonymous declarant's statements were nontestimonial because they were made to enable police to address an ongoing emergency. The declarant reported an emergency to the officers: an unknown assailant had just attempted to stab him. Thus, the officers knew an assailant armed with a knife was at large and potentially posed an immediate threat to the public. (See *People v. Blacksher, supra,* 52 Cal.4th at p. 814.) Because the motive for the stabbing was unknown, the officers did not know whether the threat was limited to the declarant. The officers could reasonably be concerned that the armed assailant would attack other persons, as he in fact did. Officer Bonner testified at the Evidence Code section 402 hearing that he "felt . . . we needed to apprehend the person that was a danger." The officers' actions bore out their view that there was an ongoing emergency: after the brief conversation with the declarant, they immediately drove around in search of the knife-wielding assailant, and discovered another victim bleeding and in dire need of assistance. Viewed objectively, the conversation between the officers and the declarant was entirely concerned with addressing an ongoing emergency, not attempting to gather information to use in a later criminal prosecution.

Further, the statements were made in a highly informal setting. The declarant saw the officers in their patrol car, flagged them down, and blurted out that he had just been attacked. His statements were not made in response to focused police questioning. The

conversation took place in an exposed, public area, and bore no indicia of formality. (See *Michigan v. Bryant, supra,* 131 S.Ct. at p. 1160.) Indeed, the encounter cannot fairly be characterized as an "interrogation" at all; it appears the declarant volunteered most, if not all, the information provided to the officers. (See *People v. Cage, supra,* 40 Cal.4th at p. 970.) The entire conversation lasted less than a minute. The information the declarant provided—that he had just been attacked, and a rudimentary description of the assailant and the general direction in which he had headed—was clearly of an ilk to assist officers in apprehending the perpetrator. (See *People v. Blacksher, supra,* at p. 816; *Michigan v. Bryant, supra,* at p. 1166.)

Finally, that the officers' primary purpose was not to procure evidence for use at a later trial is demonstrated by the fact they drove away in search of the perpetrator without even getting the declarant's name or contact information. Nor is there any showing that the brief conversation between the declarant and the officers evolved into a testimonial interrogation. (See *Davis v. Washington, supra,* 547 U.S. at p. 828; *People v. Blacksher, supra,* 52 Cal.4th at pp. 814-815.) "[T]he primary purpose for both [the declarant and the officers] was to determine defendant's whereabouts and evaluate the nature and extent of the threat he posed." (*People v. Blacksher, supra,* at p. 816.)

The recent case of *People v. Chism* is analogous to the instant matter. There, the declarant, Miller, was sitting near a liquor store when heard a gunshot and saw men run from the building. Miller entered the store and found the clerk unconscious and bleeding. When police officers arrived minutes later, Miller described the men to them. (*People v. Chism, supra,* 58 Cal.4th at pp. 1281, 1287-1288.) Miller was unavailable to testify at trial. *Chism* held admission of Miller's statements to police did not violate the confrontation clause. The court explained: "Miller appeared to be very nervous and 'shaken up.' The circumstances of the encounter, which took place outside a store where a shooting had recently occurred, reveal that Miller and Officer Romero spoke to each other in order to deal with an ongoing emergency. It was objectively reasonable for Officer Romero to believe the suspects, one of whom presumably was still armed with a gun, remained at large and posed an immediate threat to officers responding to the

10

shooting and the public. . . . Miller's additional statements concerning his observations and descriptions of the suspects were made for the primary purpose of meeting an ongoing emergency and not to produce evidence for use at a later trial." (*Id*. at p. 1289; see also *People v. Romero* (2008) 44 Cal.4th 386, 422; *Davis v. Washington, supra,* 547 U.S. at p. 828.)

Lane attempts to distinguish the instant matter from the United States Supreme Court's decision in *Michigan v. Bryant* on the ground that here, the declarant was not injured or dying; was "not trying to get information out to police before he lost consciousness or his life"; "no gunman was on the loose"; police could not have "reasonably . . . believed there [was] an ongoing emergency"; and the declarant was "reporting a completed crime to police for the primary purpose of initiating a criminal investigation." These arguments are unpersuasive. Just as in *Bryant* and *Chism,* an armed assailant was on the loose. Lane offers no persuasive reason why the situation did not constitute an emergency. We discern no meaningful difference between the types of weapons—a gun versus a knife—in this case and *Bryant* and *Chism. Bryant* does not require that the victim must be dying in order for an emergency situation to exist; in *Chism,* the declarant was a witness, not a victim. In sum, the declarant's statements were nontestimonial and their admission did not violate Lane's confrontation rights.

2. *There was ample evidence to support the assault convictions.*

Lane was charged in counts 3 and 4 with assaults with a deadly weapon on "John Doe," arising from the attacks on the man who reported his attempted stabbing to police and the man with the shopping cart. Lane contends the evidence was insufficient to prove these two assault convictions. We disagree.

When determining whether the evidence was sufficient to sustain a criminal conviction, " 'we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.

11

[Citation.]' " (*People v. Brown* (2014) 59 Cal.4th 86, 105-106; *People v. Carrington* (2009) 47 Cal.4th 145, 186-187.) The same standard applies to cases involving circumstantial evidence. (*People v. Brown, supra,* at p. 106.) Reversal is not warranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Section 245, subdivision (a)(1), makes it a crime to commit "an assault upon the person of another with a deadly weapon or instrument other than a firearm." An assault is defined by section 240 as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Thus, to establish a violation of section 245, subdivision (a)(1), the People must prove: (1) the defendant committed an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (2) the defendant did the act willfully; (3) the defendant was aware of facts that would lead a reasonable person to realize that his act would directly and probably result in the application of force to someone; and (4) when the defendant acted, he had the present ability to apply force with a deadly weapon. (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1183, 1186-1187; *People v. Golde* (2008) 163 Cal.App.4th 101, 108-109; CALCRIM No. 875.) Assault is a general intent crime, and does not require a specific intent to injure the victim; however, the defendant must actually know facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another. (*People v. Wyatt* (2012) 55 Cal.4th 694, 702; *People v. Chance* (2008) 44 Cal.4th 1164, 1167-1168.) The present ability element is satisfied when a defendant " 'has attained the means and location to strike immediately.' " (*People v. Chance, supra,* at p. 1168.)

These elements were satisfied here. Franco testified that Lane was armed with three knives. Franco also saw Lane pull out one of the knives and lunge at the first victim. Lane was so close to the first victim that Franco believed Lane had succeeded in stabbing him. Franco testified that when the second victim passed by, Lane lunged with the knife at his stomach or chest area from a distance of three to four feet. One of the

12

victims flagged police down and stated someone had just attempted to stab him. Lane actually completed his attack on the third victim. This evidence amply proved Lane committed acts against the first and second victims that, by their nature, would directly and probably result in the application of force. In light of the deliberate nature of Lane's actions, the jury could readily infer the knowledge and willfulness elements were met. Given Lane's proximity to the victims and his possession of multiple knives, the evidence was sufficient to prove the present ability element.

Lane's arguments to the contrary are unpersuasive. He urges that there was no evidence Lane "completed an assault" upon, or "actually assaulted," either victim; neither victim suffered injury; and "the evidence, at most, would have only supported a conviction for attempted assault likely to cause great bodily injury." But there is no crime of "attempted assault" in California (*People v. Moore* (2011) 51 Cal.4th 1104, 1137; *In re James M.* (1973) 9 Cal.3d 517, 519), and neither physical contact with the victim nor actual injury is required to prove assault. (*People v. Wyatt, supra,* 55 Cal.4th at p. 702; *People v. Brown* (2012) 210 Cal.App.4th 1, 7; *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1086.) "One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)

Lane further argues that because the first victim was able to get out of the way before the blow struck him, and because the second victim was three to four feet away and managed to block Lane's approach with a shopping cart, there was no showing he had the " 'the means and location' " to commit the assault. These facts do not demonstrate any evidentiary deficit. To amount to assault, the defendant's conduct need not "immediately precede a battery." (*People v. Chance, supra,* 44 Cal.4th at p. 1167.) "[A]n assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate', in the strictest sense of that term." (*Id.* at p. 1168; see also *People v.*

13

*Raviart* (2001) 93 Cal.App.4th 258, 267 [that officer was sheltered by a building when the defendant shot at him did not preclude the jury from finding the defendant had the present ability to injure him]; *People v. Valdez* (1985) 175 Cal.App.3d 103, 108, 112-113 [present ability element satisfied although the victim was standing behind bullet-resistant glass].) " 'The fact an intended victim takes effective steps to avoid injury has never been held to negate' " the present ability element. (*People v. Raviart, supra,* at p. 267*; People v. Valdez, supra,* at p. 113.)

   3. *The trial court did not commit instructional error.*

   Next, Lane avers that the trial court erred by failing to instruct, sua sponte, on the lesser included offense of simple assault (§ 240) on counts 3 and 4. He is incorrect.

   A trial court must instruct the jury on all general principles of law relevant to the issues raised by the evidence, including lesser included offenses, whether or not the defendant makes a formal request. Instruction on a lesser included offense is required when there is evidence that indicates the defendant is guilty of the greater offense but not of the lesser. (*People v. Whalen* (2013) 56 Cal.4th 1, 68-69; *People v. Wyatt, supra,* 55 Cal.4th at p. 698; *People v. Thomas* (2012) 53 Cal.4th 771, 813; *People v. Manriquez* (2005) 37 Cal.4th 547, 584.) Substantial evidence is evidence that a reasonable jury could find persuasive. (*People v. Benavides* (2005) 35 Cal.4th 69, 102.) The existence of any evidence, no matter how weak, will not justify instructions on a lesser included offense. (*People v. Whalen, supra,* at p. 68; *People v. Wyatt, supra,* at p. 698.) In deciding whether there is substantial evidence we do not evaluate the credibility of the witnesses, a task for the jury. (*People v. Manriquez*, *supra*, at p. 585; *People v. Wyatt, supra,* at p. 698.) We independently review the question of whether the trial court erred by failing to instruct on a lesser included offense. (*People v. Booker* (2011) 51 Cal.4th 141, 181.)

   Simple assault (§ 240) is a lesser included offense of aggravated assault (§ 245, subd. (a)(1)). (*People v. Carmen* (1951) 36 Cal.2d 768, 775 ["Assault with a deadly weapon is nothing more than an assault where there is used either a deadly weapon or any means of force likely to produce 'great' bodily injury"], disapproved on another ground

in *People v. Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12; *People v. Rupert* (1971) 20 Cal.App.3d 961, 968; *People v. Richardson* (1972) 23 Cal.App.3d 403, 408-409; cf. *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.) However, a jury should not be instructed on simple assault if, based on the evidence, it could find the defendant either guilty of assault with a deadly weapon or not guilty at all. (*People v. Page* (2004) 123 Cal.App.4th 1466, 1474.)

Such was the case here. In order for jury to find Lane guilty of only simple assault, it would have had to believe he did not use a knife in the attacks. There was no evidence supporting such a theory. Franco observed Lane organizing several kitchen knives prior to the attacks. Franco unequivocally testified that Lane lunged at the first two victims *with a knife*. One of the victims told police that Lane tried to stab him *with a knife*. Officers discovered several knives on the bus that Lane rode away from the crime scene. And, of course, the third victim, Chavez, was actually stabbed and almost killed by Lane's knife attack. In short, the only evidence showed Lane used a knife in all the attacks. Accordingly, the trial court was not obliged to instruct on simple assault. (See *People v. Page, supra,* 123 Cal.App.4th at p. 1474; *People v. Berry* (1976) 18 Cal.3d 509, 518-519; *People v. Whitsett* (1983) 149 Cal.App.3d 213, 221.)

Lane argues the jury could have found him guilty of only simple assault because there was no evidence he was close enough to inflict significant injury on the first two victims. Assuming arguendo this circumstance could have supported a simple assault instruction, Lane's argument nevertheless fails as a factual matter. The evidence showed Lane was so close to the first victim that Franco thought he had stabbed him. The second victim with the shopping cart was within three or four feet of Lane, and appears to have escaped injury only because he was able to use the cart as a shield. "Here, it would be speculative at best to construe the trial evidence in this case as supporting a verdict of only simple assault." (*People v. Wyatt, supra,* 55 Cal.4th at p. 704 ["even if a reasonable person might believe that minor or moderate harm was a possible outcome, the trial court is not required to 'instruct sua sponte on the panoply of all *possible* lesser included offenses' "].)

15

*People v. Rupert, supra,* 20 Cal.App.3d 961, cited by Lane, does not assist him. In *Rupert,* the defendant attacked his fiancé's mother with a knife in the middle of the night. When the fiancé attempted to come to her mother's aid, the defendant hit the fiancé with his fists and possibly a coffee pot. The court instructed on assault by means likely to produce great bodily injury in regard to the attack on the fiancé, but did not instruct on simple assault. *Rupert* concluded this was error, because "[w]hile the evidence [was] sufficient to support the jury's finding of assault by means of force likely to produce great bodily injury, the jury might also have reasonably concluded that no such force was used." (*Id.* at p. 968.) But here, in contrast to *Rupert,* the only evidence showed Lane used a deadly weapon, a knife, in all three attacks. (See *People v. Lesnick* (1987) 189 Cal.App.3d 637, 643 [where defendant stabbed the victim with a knife, the trial court had no duty to instruct on simple assault].)

Finally, even if the trial court erred—a conclusion we do not adopt—any error was manifestly harmless in light of the overwhelming evidence presented by the People. "The failure to instruct on a lesser included offense in a noncapital case does not require reversal 'unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.' " (*People v. Wyatt, supra,* 55 Cal.4th at p. 698; *People v. Beltran* (2013) 56 Cal.4th 935, 955; *People v. Breverman* (1998) 19 Cal.4th 142, 165.)

Franco saw Lane organize a set of knives, and then systematically attack passersby with them. Chavez testified that Lane approached and struck him in the chest with the knife. One of the John Doe victims flagged down police and told them he had been attacked by a knife-wielding assailant. When apprehended Lane was found in possession of a bloody sheet and clothing, and knives were found on the bus on which he had ridden. In light of this evidence, no reasonable jury would have concluded Lane did not use a knife in the attacks, or employed some quantum of force unlikely to produce great bodily injury. Thus, it is not reasonably probable Lane would have obtained a more favorable result had the jury been instructed on simple assault.

16

4. *Three of the section 667, subdivision (a) enhancements must be stricken.*

The information alleged that Lane had suffered five prior serious felonies within the meaning of section 667, subdivision (a)(1), and the trial court found all five prior conviction allegations true.  At sentencing, the trial court imposed five-year sentences for each of the five enhancements, for a total of 25 additional years.  Lane contends, and the People concede, that three of the prior convictions alleged pursuant to section 667, subdivision (a)(1) do not qualify as serious felonies.  We agree.

Section 667, subdivision (a)(1) provides that the prison sentence for a current serious felony conviction is subject to a five-year consecutive enhancement if the defendant suffered a prior conviction for a serious felony on charges brought and tried separately.[3]  (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.)  Subdivision (a)(4) of section 667 provides, "as used in this subdivision, 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7."

To prove the prior conviction allegations, the People presented certified prison records in the form of a section 969b packet.  (*People v. Delgado, supra,* 43 Cal.4th at p. 1065 [the People must prove every element of a sentence enhancement beyond a reasonable doubt].)  That evidence established that Lane had suffered a prior conviction for manslaughter in 1987 (§ 192).  He had also been convicted in case No. A317978, on July 22, 1976, of kidnapping by force or fear; two counts of abduction for purposes of prostitution (§ 266a); and one count of conspiracy to abduct for purposes of prostitution.

Violation of section 266a, taking a person by force or fraud for purposes of prostitution, is not listed in section 1192.7, subdivision (c), and therefore is not a serious

---

[3]     Section 667, subdivision (a)(1) provides:  "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately.  The terms of the present offense and each enhancement shall run consecutively."

felony for purposes of section 667, subdivision (a). Section 1192.7 defines conspiracies to "commit an offense described in this subdivision" as serious felonies (§1192.7, subd. (c)(42)), but does not otherwise list conspiracy as a serious felony. In Lane's case, the prior conspiracy was to commit the crime of taking a person for prostitution. Because that offense is not listed as a serious felony, conspiracy to commit the offense is likewise not a serious felony for purposes of the section 667, subdivision (a) enhancement.

Moreover, "[t]o satisfy the 'brought and tried separately' requirement, 'the underlying proceedings must have been formally distinct, from filing to adjudication of guilt.' " (*People v. Frausto* (2009) 180 Cal.App.4th 890, 903.) Here, four of the prior convictions (the kidnapping, conspiracy, and the two abduction for prostitution offenses) all occurred in case No. A317978, on July 22, 1976.

Accordingly, for both of the foregoing reasons, it was error to impose more than two five-year enhancements pursuant to section 667, subdivision (a)(1). (*People v. Frausto, supra,* 180 Cal.App.4th at p. 903.)

5. *Custody credits.*

Lane was arrested on February 5, 2005, and sentenced on May 2, 2013. During the intervening period, the trial court found him incompetent to stand trial, and he was treated and evaluated at Patton State Hospital during various periods. On May 3, 2012, the court found his competence had been restored, and trial commenced in January 2013. Thus, between February 5, 2005 and May 2, 2013, Lane was either in custody at the county jail, or at Patton State Hospital. The trial court awarded Lane 2,946 days of actual custody credit, and no days of presentence conduct credit. Lane avers that he is entitled to conduct credits under section 4019 for periods of time he was (1) in jail, and (2) awaiting transport from the hospital to county jail or court after being certified as competent to stand trial. The People agree that Lane's actual and conduct credits were miscalculated. We agree with the parties.

A criminal defendant is entitled to credit for all days actually spent in pretrial custody, whether in jail or a state hospital pursuant to competency proceedings. (§ 2900.5, subd. (a); *People v. Callahan* (2006) 144 Cal.App.4th 678, 684-685; *In re*

18

*Banks* (1979) 88 Cal.App.3d 864, 866, 870.)  Therefore, Lane was entitled to 3,007 days of actual custody credit rather than the 2,946 days awarded.  (*People v. Denman* (2013) 218 Cal.App.4th 800, 814 [calculation of custody credit begins on the date of arrest and continues through the date of sentencing].)

A defendant is also  entitled to conduct credits for days spent in jail awaiting trial. (§ 4019; *People v. Callahan, supra,* 144 Cal.App.4th at p. 686.)  When the defendant is ultimately convicted of certain enumerated violent crimes, his or her pretrial conduct credits are limited to 15 percent of actual time served.  (§ 2933.1, subd. (c); *People v. Duff* (2010) 50 Cal.4th 787, 794.)  Lane's crime, attempted murder, is such a violent felony.  (§ 2933.1, subd. (c); 667.5, subd. (c)(12).)  A defendant is generally not entitled to conduct credits for time spent being treated at a state hospital while incompetent, because such credits are inconsistent with the therapeutic goal of returning the defendant to competency.  (*People v. Waterman* (1986) 42 Cal.3d 565, 569-571; *People v. Bryant* (2009) 174 Cal.App.4th 175, 182; *People v. Callahan, supra,* at pp. 686-687.)  An exception to the latter rule applies, however:  equal protection principles require that a defendant is entitled to conduct credits if the hospital confinement becomes essentially penal, for example, when the defendant is deemed competent by hospital staff but remains at the hospital while awaiting transport back to jail.  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30, fn. 6; *People v. Bryant, supra,* at pp. 182, 184; see also *People v. Guzman* (1995) 40 Cal.App.4th 691, 694-695; *People v. Nubla* (1999) 74 Cal.App.4th 719, 731-732; *People v. Cramp* (1984) 162 Cal.App.3d 632, 633.)

Accordingly, Lane is entitled to pretrial conduct credits for all days he spent in local custody, or at Patton State Hospital after he was found competent but had not yet been transported back to jail.  Because the record does not establish the precise dates upon which Lane was in jail or at the hospital, the matter must be remanded for recalculation of his credits.  (*People v. Duff, supra,* 50 Cal.4th at p. 793; *People v. Buckhalter, supra,* 26 Cal.4th at p. 30, fn. 6.)

## DISPOSITION

Three of the Penal Code section 667, subdivision (a) five-year enhancements are ordered stricken. The matter is remanded to the trial court for recalculation of Lane's pretrial credits. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.