Filed 12/15/21  P. v. Mariano CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENNETH THURSTON MARIANO,<br><br>    Defendant and Appellant. | 2d Crim. No. B304201<br>(Super. Ct. No. 2018033244)<br>(Ventura County) |

Kenneth Thurston Mariano appeals a judgment following his conviction of assault with a semiautomatic firearm (Pen. Code,[1] § 245, subd. (b)) (counts 2, 5, 6); possession of a firearm by a felon (§ 29800, subd. (a)(1)); and resisting arrest (§ 148, subd. (a)(1)).  The jury found special allegations as to counts 2 and 5 that Mariano personally used a firearm.  (§ 12022.5, subd. (a).) The trial court sentenced Mariano to an aggregate prison term of 13 years.

---

[1] All statutory references are to the Penal Code.

We conclude, among other things, that substantial evidence supports the judgment and that Mariano has not shown prosecutorial misconduct. We affirm.

FACTS

In the early morning hours of September 23, 2018, Mariano called Antoinette Acosta and asked to come over to her house "and drink." After he arrived, Steven Santana called Acosta because he wanted to buy drugs from her. Mariano and Acosta went to an "Airbnb" house where Santana had been staying. Santana told Acosta the drugs were for his friend and his friend would pay her. Acosta displayed her cocaine for sale. Santana took the drugs then told Acosta that he would be right back and he left.

Santana had been gone for 15 minutes. Acosta was now worried that she was not going to be paid for her drugs. She went through the house knocking on doors looking for Santana. Acosta went back to the area of the home where she had placed her drugs and noticed that her drugs were gone. She started screaming for Santana and texted him on his cell phone.

Santana did not respond to Acosta's phone calls and text messages. Acosta testified that Mariano has "always been kind of like the protector." She told him, "[E]verything is gone. They took the drugs." Mariano began yelling, "Where is he?" Acosta pointed to the area of the home where she thought Santana might be staying.

James Zou testified that on September 23, 2018, he was staying at that Airbnb house in Simi Valley. He woke up to the sound of loud noises. He took a shower and heard a knock on the door. Zou did not respond. He heard a man yelling, "Open the door." When Zou opened the door, he saw Mariano pointing a

gun at him. Mariano said, "Give me money." Mariano was three feet away from Zou. Zou was "shocked." Mariano saw Zou's wallet on the bed and he picked it up. A woman behind Mariano said, "It's not him." Mariano threw the wallet back on the bed and left.

Santana testified he was invited by a friend to come to the Airbnb house in Simi Valley. He called his girlfriend Victoria Haynes to join him there. While in the bedroom they heard loud noises, arguing, and a "woman's voice shouting." Santana told Haynes to go to the bathroom and lock the door. Santana then decided to stay in the bathroom with Haynes. They heard the bedroom door "being forced open." Mariano kicked open the bathroom door. He pointed a gun at Santana and said, "I need you to pay me." Santana gave Mariano his watch and he offered to give Mariano the keys to his truck. Santana testified he was "scared for [his] life."

Haynes testified that when Mariano broke into the bathroom and pointed the gun, she covered her eyes and was crying. She was standing behind Santana. Mariano was pointing the gun in her general direction.

Acosta took some items from the home before leaving. She and Mariano drove away from the house. When they approached a law enforcement roadblock, Mariano got out of the car and fled. He was subsequently arrested.

Derek Poon, a crime laboratory forensic scientist specializing in firearms, testified the gun used in the crimes is a "45 ACP caliber," which is "commonly known as a '45' " semiautomatic pistol. It was in operating condition.

Mariano did not testify.

DISCUSSION

*Substantial Evidence*

Mariano contends the evidence is insufficient to support his conviction for assault with a semiautomatic firearm on counts 2, 5, and 6. We disagree.

On challenges to the sufficiency of the evidence, we draw all reasonable inferences in support of the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not weigh the evidence, resolve evidentiary conflicts, or decide the credibility of the witnesses. (*Ibid.*)

For this offense, the People must prove that (1) "defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person" (*People v. Golde* (2008) 163 Cal.App.4th 101, 121); (2) "[d]efendant did the act willfully" (*ibid.*); (3) "[w]hen defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone" (*ibid.*); and (4) "[w]hen defendant acted, he had the present ability to apply force likely to produce great bodily injury or with a deadly weapon" (*ibid.*).

"[A]ssault does not require a specific intent to injure the victim." (*People v. Williams* (2001) 26 Cal.4th 779, 788.)

There is well-established precedent regarding defendants committing assault by pointing a gun at a person. "[P]resenting a gun at a person . . . [has] been held to constitute an assault." (*People v. McMakin* (1857) 8 Cal. 547, 548.) "The mere pointing of a gun at a victim constitutes an assault with a deadly weapon, whether or not it is fired at all." (*People v. Laya* (1954) 123 Cal.App.2d 7, 16.) "[I]t is not necessary to actually point the gun directly at the other person to commit the crime." (*People v.*

4

*Raviart* (2001) 93 Cal.App.4th 258, 263.) Where a gun is pointed in the general direction of a victim, a conviction may be sustained where the gun "was in a position to be used instantly." (*People v. Thompson* (1949) 93 Cal.App.2d 780, 782.)

"The drawing of a weapon is generally evidence of an intention to use it." (*People v. McMakin, supra*, 8 Cal. at p. 549.) "[Y]et that evidence may be rebutted when the act is accompanied with a declaration, or circumstances, showing no intention to use it." (*Ibid.*)

In *People v. Chance* (2008) 44 Cal.4th 1164, the defendant pointed a gun at a place where he believed a police officer would appear. When the officer told him to drop the weapon, he lowered it and "flipped it behind him." (*Id.* at p. 1169.) The court held he could be convicted of assault. It said, "[I]t is a defendant's action enabling him to inflict present injury that constitutes the actus reus of assault. *There is no requirement that the injury would necessarily* occur as the very next step in the sequence of events, or without any delay." (*Id.* at p. 1172, italics added.) "[A]ssault *does not require a direct attempt at violence*." (*Ibid.*, italics added.)

In *People v. Miceli* (2002) 104 Cal.App.4th 256, the court discussed the elements of the crime of assault with a semiautomatic firearm. It said, "To point a loaded gun in a threatening manner at another . . . constitutes an assault, because one who does so has the present ability to inflict a violent injury on the other and the act by its nature will probably and directly result in such injury." (*Id.* at p. 269.) Nothing in case law "indicates that assault with a semiautomatic weapon requires proof the gun was operable as a semiautomatic at the

5

time of the assault." (*Id.* at p. 270.) " 'A firearm does not cease to be a firearm when it is unloaded or inoperable.' " (*Ibid.*)

Mariano contends the evidence in count 2 relating to victim Zou is not sufficient for assault with a deadly weapon. We disagree. Mariano claims that there are inferences that could be drawn from the evidence to support his defense. But the issue is not what evidence or inferences may support appellant, it is whether substantial evidence supports the judgment. Mariano notes that he did not fire a weapon or strike Zou with it. But that type of conduct is not required to prove assault with a deadly weapon. (*People v. Chance*, *supra*, 44 Cal.4th at p. 1172; *People v. Laya*, *supra*, 123 Cal.App.2d at p. 16.) He held a deadly weapon and he consequently had the present ability to apply force likely to produce great bodily injury. (*People v. Miceli*, *supra*, 104 Cal.App.4th at p. 269.) Mariano pointed the gun at Zou and demanded money. Zou was "shocked" by having the gun pointed at him. A trier of fact could find that was a reasonable reaction to Mariano's conduct. Because Mariano pointed the weapon and asked for money, Zou could reasonably believe that if he resisted or did not comply with Mariano's demands, he would be shot. Mariano has not shown why the jury could not also reasonably infer that he knew the consequences when he pointed the gun and acted willfully.

Mariano ultimately realized that Zou was not the person he sought to target and he threw the wallet back on the bed. But this does not change the result. Mariano may not commit an assault on one victim and then claim immunity from criminal liability because he later discovered he had made a mistake regarding his ultimate target victim. (*People v. Lee* (1994) 28 Cal.App.4th 1724, 1734-1736; *People v. Williams* (1980) 102

6

Cal.App.3d 1018, 1028; see also *People v. Chance. supra*, 44 Cal.4th at pp. 1168-1169, 1176 [fact that defendant changed his mind and tossed the gun away did not immunize him from criminal liability for assault for his prior act of pointing the gun].)

Mariano contends the evidence is insufficient for conviction of assault in count 5 regarding Santana. He claims he did not fire the gun or strike Santana with it. But those are not necessary elements for a conviction. (*People v. Chance, supra*, 44 Cal.4th at p. 1172; *People v. Laya, supra*, 123 Cal.App.2d at p. 16.) Mariano engaged in a course of conduct that resulted in fear and intimidation for Santana. While Santana was hiding in the bathroom, Mariano broke into the bedroom. He kicked open the bathroom door. He pointed a gun at Santana and demanded money. Mariano was pointing the gun at Santana's head at close range. Santana was afraid. He gave Mariano his watch and offered to give him the keys to his truck. The evidence is sufficient. (*Ibid.*; *People v. Miceli, supra*, 104 Cal.App.4th at p. 269.)

As to count 6, Mariano contends there is insufficient evidence to support a conviction for assault against Haynes. He claims "upon finding Haynes with Santana in the bathroom, he did not engage her." Mariano argues that he "directed his demand for money solely to Santana" and he "did not direct Haynes to do anything and made no demands of her at all."

But in making these arguments, he does not consider the reasonable inferences the jury could draw from Haynes's testimony to support a conviction on count 6. She was standing behind Santana. She said Mariano was pointing the gun in her general direction. She consequently was in the potential line of fire of that weapon. The gun did not have to be pointed directly

at her.  (*People v. Raviart*, *supra*, 93 Cal.App.4th at p. 263.)  It is sufficient that while pointing the weapon, it "was in a position to be used instantly."  (*People v. Thompson*, *supra*, 93 Cal.App.2d at p. 782.)  Mariano had "the present ability to inflict a violent injury on [her]."  (*People v. Miceli*, *supra*, 104 Cal.App.4th at p. 269.)  His act "by its nature will probably and directly result in such injury."  (*Ibid.*)

Mariano claims, "As to Haynes, the conviction is particularly confounding because the jury rejected the enhancement alleging personal use of a firearm."  But "[u]nder section 954, the jury's 'not true' finding on the personal firearm use enhancements may be logically inconsistent with a finding that defendant was the direct perpetrator of the charged offenses, but, by statute, the inconsistency is not grounds for reversal because substantial evidence supported the verdict."  (*People v. Miranda* (2011) 192 Cal.App.4th 398, 407.)

Citing *McMakin*, Mariano claims he rebutted the inference of his intent to use the gun because his act was "accompanied with a declaration, or circumstances, showing no intention to use it."  (*People v. McMakin*, *supra*, 8 Cal. at p. 549.)  But while pointing the gun at his victims, he made no statement indicating that he would not shoot them.  Instead, he used the gun, and the risk a pointed gun poses, to demand money from them.

Mariano's trial counsel told jurors that Mariano's actions were justified by the necessity to try to obtain the return of property that had been taken.  But the action of breaking down doors, pointing a gun, demanding money for the return of items, including illegal drugs, is not conduct that would support the defense of necessity.  (*People v. Miceli*, *supra*, 104 Cal.App.4th at p. 267.)

Mariano's trial counsel told the jury that they should not convict Mariano of assault because his actions in confronting Zou and Santana were reasonable based on what he knew at the time he acted about the house and the two men. But the jury rejected this claim by its verdicts.

*Prosecutorial Misconduct*

Mariano contends the judgment must be reversed because the prosecutor in argument committed misconduct by misstating the law. We disagree.

"A prosecutor commits misconduct under state law if he or she uses 'deceptive or reprehensible methods' in an attempt to persuade the jury." (*People v. Hill* (1998) 17 Cal.4th 800, 845.) Where a defendant is objecting to a prosecutor's statements to the jury, "the question is whether there is a reasonable likelihood that the jury" applied them "in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Mariano highlights three comments the prosecutor made in her argument to the jury. But he did not object at trial to the first two of these comments that we will discuss. That normally constitutes a forfeiture of these claims on appeal. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328.) But even on the merits, the result will not change.

The prosecutor made the following comments to the jury in argument: "[I]t doesn't really matter whether [the defendant is] intending to point [the gun] at Mr. Santana or intending to point it at Ms. Haynes. They are standing next to each other. He is committing assault on both of them with that firearm because they were in fear for their lives, and in fear of the defendant when he pointed the gun in their direction."

9

This was a proper comment in discussing the evidence about Mariano pointing the gun in the direction of Santana and Haynes. The prosecutor did not mislead the jury about the facts or the law of assault involving pointing a gun in the direction of multiple victims. Her point was that whether Mariano intended to point it at Santana or Haynes, they were both in the line of fire because they were standing together and he pointed it in their direction. (*People v. Miceli, supra,* 104 Cal.App.4th at p. 269; *People v. Raviart, supra,* 93 Cal.App.4th at p. 263 ["Assault with a deadly weapon can be committed by pointing a gun at another person . . . , but it is not necessary to actually point the gun directly at the other person to commit the crime"]; *People v. Thompson, supra,* 93 Cal.App.2d at p. 782 ["While [appellant] did not point the gun directly at them or either of them, it was in a position to be used instantly"].)

The prosecutor stated, "Element one of Counts 2, 5, and 6 has been proven to you beyond a reasonable doubt. The defendant held each of those victims at gunpoint by extending that firearm to their chest from three feet away, an act that by its nature would directly and probably result in the application of force to a person, if he chose to use it. He did that act willfully, and when he acted, screaming at them that he wanted money, yelling at them, not explaining anything, clearly he's leading a reasonable person to realize that that act by its nature could directly and probably result in the application of force."

This was a summary of the People's evidence and Mariano has not shown that the prosecutor misstated the law or the required elements of assault. (*People v. Miceli, supra,* 104 Cal.App.4th at p. 269; *People v. Golde, supra,* 163 Cal.App.4th at p. 121.)

10

Mariano objected to a third comment by the prosecutor that the trial court overruled. He notes that there are four elements that have to be proved for assault. Element one is "[t]hat defendant did an act with a deadly weapon *that by its nature would directly and probably result in the application of* force to a person." (*People v. Golde*, *supra*, 163 Cal.App.4th at p. 121, italics added.) The third element is, "[w]hen defendant acted, he was aware of facts that would *lead a reasonable person to realize that his act* by its nature would directly and probably result in the application of force to someone." (*Ibid.*, italics added.)

During her argument, the prosecutor stated, "[W]hat element one tells you is that the defendant did an act with a firearm that by its nature would give a reasonable person the idea that it could be used to perform a harmful or offensive touching against them."

Mariano contends the prosecutor "misstated the law, combining the first and third elements of assault." This was a mistake. But what Mariano does not mention is that later in her argument the prosecutor correctly stated the first and third elements during arguments about the evidence supporting the People's case. "Placed in context, the statement appears to have been a slip of the tongue, a reporting error, or at most a harmless mistake." (*People v. Najera* (2006) 138 Cal.App.4th 212, 222.) Mariano does not claim that the trial court erred in instructing the jury on the elements of assault. "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court." (*Boyde v. California* (1990) 494 U.S. 370, 384.) The court's instructions "are viewed as definitive and binding statements of the law." (*Ibid.*) "The trial court correctly instructed the jury to follow the court's instructions, not the

11

attorneys' description of the law, to the extent there was a conflict.  We presume the jury followed that instruction." (*Najera*, at p. 224.)  "In light of those instructions, we reject the notion that the reference could have confused or misled the jury." (*People v. Tully* (2012) 54 Cal.4th 952, 1023, fn. 28.)  The request for reversal fails because the "evidence of defendant's guilt was overwhelming."  (*People v. Mendoza* (2007) 42 Cal.4th 686, 704.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.

12

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Linda L. Currey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.